## Richmond.

SEABOARD AIR LINE RAILWAY v. CHAMBLIN AND OTHERS.

March 12, 1908.

1. EVIDENCE—*Value of an Undivided Interest in Land—Prior Purchase of Other Interest.*—The fact that a railway company has recently purchased an undivided one-half interest in real estate at a specified price, under circumstances which show that the purchase was made without compulsion and not by way of compromise, is admissible evidence for the purpose of ascertaining the market value of the remaining undivided fee-simple one-half of the same property, in a proceeding instituted by the company for its condemnation.

2. EVIDENCE.—A party cannot be heard to object to the consideration of evidence offered by his adversary when he has himself introduced the same evidence.

Error to a judgment of the Hustings Court of the city of Richmond in a proceeding to condemn land. To a judgment ascertaining the value of the land, the petitioner assigns error.

*Affirmed.*

*E. R. Williams,* for the plaintiff in error.

*Charles S. Stringfellow* and *Leake & Carter,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

The Seaboard Air Line Railway presented its petition in the Hustings Court of the city of Richmond, in which it shows, that in order to provide for the convenient conduct of its business in the city of Richmond it desires to acquire the fee-simple interest in that certain piece or parcel of land, with improvements there-

on, constituting a part of the real estate occupied by the Richmond Iron Works, known as the Chamblin & Scott property; that the fee-simple interest in the tract of land referred to was the partnership property of the late James H. Scott and John Chamblin, the title to it being fully set forth in the record of the chancery suit of *John Chamblin, Surviving Partner, etc.* v. *James H. Scott's Administrators, et als.,* pending on the chancery side of the Law and Equity Court of the city of Richmond, from a report in which it appears that the property belongs to John Chamblin, surviving partner, for himself and James H. Scott, former partners doing business as Chamblin & Scott; that it is partnership assets, and is first liable for the payment of the partnership debts and liabilities, and then to be equally divided between himself and the personal representatives of James H. Scott, deceased, they having been equal partners in the business formerly conducted by them upon this property. The petition further shows that by deed dated the 30th day of December, 1905, between the said John Chamblin and the Seaboard Air Line Railway, the petitioner acquired the entire interest of Chamblin in the partnership assets in the late firm of Scott & Chamblin, including his undivided one-half interest in the tract of land hereinbefore described.

The petitioner further shows that, although it has acquired the undivided one-half interest in the land, it has been unable to agree with the parties authorized to sell on the terms of purchase for the remaining undivided one-half interest; and now seeks to acquire in these proceedings an undivided one-half fee-simple interest in the tract of land above described, with improvements, constituting a part of the real estate, subject to the lease of the Richmond Iron Works, if any it has.

The administrators of James H. Scott, and his heirs at law, were made parties to this proceeding, and five disinterested freeholders were appointed commissioners by the court, who reported as follows: That upon the evidence before them they decided to make an alternative award:

"1. If the evidence produced before us, that the said Seaboard Air Line Railway, on the 30th day of December, 1905, purchased of John Chamblin one undivided one-half fee-simple interest in the said land, at the price of $27,500, is competent evidence and admissible, then we are of opinion and do ascertain that for the other one undivided one-half fee-simple interest in said land proposed to be taken in these proceedings, $27,500 would be a just compensation.

"2. If said evidence is incompetent and inadmissible, then we are of opinion and do ascertain that for the undivided one-half fee-simple interest in said land proposed to be taken in these proceedings, $25,000 would be a just compensation.

"We are advised that, under the law governing this proceeding, 'the inquiry must be what is the property worth in the market, from its availability for valuable uses both now and in the future.' We take it that 'future' means reasonable future. 'If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value, the owner is entitled to the benefit of it.'

"We are of opinion that the property in question is peculiarly adapted for railroad purposes; in fact, that its value for such purposes is largely in excess of its value for any other purposes.

"Now, the officials of the Seaboard Air Line Railway, who are specially qualified to pass upon the value of this property for railroad purposes, have without compulsion or by way of compromise, paid within the last few months $27,500 for one-half of the whole property. Under these circumstances, and in view of the fact that our award, treating said evidence of purchase as inadmissible, is $25,000, we think that we are justified, when treating said evidence as admissible, to attach great weight to said purchase and to make our award $27,500."

The Hustings Court, by its final order, gave judgment against the railroad for $27,500, and to that judgment a writ of error was awarded upon the petition of the Seaboard Air Line Railway.

There is nothing for us to decide except as to the admissibility of the proof, that the railway company, on the 30th day of December, 1905, purchased of John Chamblin one undivided one-half fee-simple interest in the land sought to be condemned, for $27,500, in a proceeding, the object of which is to ascertain the market value of the fee-simple interest in the remaining half of the same parcel of land.

Before discussing the subject, it would be well to point out the precise mode in which the question is presented to us. We are not embarrassed by any consideration as to similarity of circumstances and situation; we are not called upon to consider varying conditions which may affect such a question, when the effort is to show market value of a parcel of land by proof of sales of other parcels of land of like character and situation. Here, the conditions are not *similar* but *identical*. The Seaboard Air Line Railway paid $27,500 for an undivided one-half interest in the fee-simple of this particular parcel of land, the other undivided one-half fee-simple interest in which it now seeks to condemn. Has or has not its former action in buying the one-half interest at $27,500 any evidential or probative force in ascertaining what would be the fair market value of the other undivided one-half of the same property?

In Lewis on Em. Dom., sec. 443, it is said that the propriety of allowing proof of sales of similar property to that in question, made at or about the time of the taking, is almost universally approved by the authorities. He then discusses what degree of similarity must exist between the property as to which such proof is offered and the property taken, and the nearness with respect to time and distance, and concludes that with respect to these no general rules can be laid down. But here, as has been seen, we are not embarrassed by such considerations. We are dealing, not with similar, but identical conditions.

But it is said by the same author, at section 447, that "what the party condemning has paid for other property is incompetent;" and the reason given is that: "Such sales are not a

fair criterion of value, because they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party or otherwise."

In the case before us, the evidence was not excepted to and the objection to its admission presented by a bill of exception, as is ordinarily the case. The commissioners in their report made alternative statements, one based upon the admission and the other upon the exclusion of the evidence, and it is upon that report the question arises. Such being the case, we are of opinion that the question must be considered as the commissioners have seen fit to present it; and they state, that "the officials of the Seaboard Air Line Railway, who are specially qualified to pass upon the value of this property for railroad purposes have, without compulsion or by way of compromise, paid within the last few months $27,500 for one-half of the whole property." That statement is nowhere controverted in the record and must be accepted as true.

"The market value of property," it is said, "is the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property, and all the uses to which it may be applied or for which it is adapted, are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. It is not a question of

the value of the property to the owner. Nor can the damages
be enhanced by his unwillingness to sell. On the other hand,
the damages cannot be measured by the value of the property
to the party condemning it, nor by its need of the particular
property. All the facts as to the condition of the property and
its surroundings, its improvements and capabilities, may be
shown and considered in estimating its value." Lewis on Em.
Dom., (2nd ed.), sec. 478.

Now, as we have seen, proof of the sale of similar property
to that in question is admissible to aid in the ascertainment of
the market value; but what the condemning party has paid for
similar property is held to be not admissible, because the price
paid has not been agreed upon by free and open estimate of its
value, but has in more or less degree been influenced and con-
strained by compromise or compulsion. But the case presented
to us is, that the particular transaction by which the railway
company agreed to pay $27,500 for the undivided one-half of
the property sought to be condemned was not under the influ-
ence of compulsion or by way of compromise, the conclusion
being that the offer made was controlled solely by the pur-
chaser's opinion and estimate as to the value of the property
bought.

Wigmore considers this subject at section 463 of his work on
Evidence. "For evidential purposes," he says, "sale-value is
nothing more than the nature or quality of the article as meas-
ured by the money which others are willing to lay out in pur-
chasing it. Their offers of money not merely indicate the
value; they are the value *i. e.*, value being merely a standard
or measure in figures, those sums are that standard. * * *
As the price at a sale is, by the law of damages, conceded to be
an element in the test of value (except perhaps in forced sales),
this question is usually presented in the form, whether a sale of
other property is admissible as evidence of the value of the
property in question. In answering this question, it is found
that the two leading principles already expounded come into

joint application,—the principle of relevancy and the principle of auxiliary policy. According to the former, the value or sale-price of the other property is irrelevant unless the property is substantially similar in conditions; according to the second, it may also be excluded, though relevant, if it involves in the case in hand a disproportionate confusion of issues and loss of time. The latter consideration has weighed so much with a few courts that they have treated it as requiring the absolute and invariable exclusion of such evidence. * * * It is enough to note (1) in answer to the argument from relevancy, that since value is a money-estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities is strongly evidential and is so treated in commercial life; all the argument and protestation conceivable cannot alter the fact that the commercial world perceives and acts on this relevancy; (2) in answer to the argument from auxiliary policy, it may be noted that this objection may or may not exist in a given instance, and that the rational and practical way of meeting it is to allow the trial court, in its discretion, to exclude such evidence when it does involve a confusion of issues, but otherwise to receive it."

In the case before us, the trial court did receive it, and it is plain that in this particular case it did not introduce a confusion of issues. Therefore; it is unaffected by any argument based upon the policy which excludes evidence which tends to a confusion of issues.

In the case of *Presbrey* v. *Old Colony & Newport Ry. Co.,* 103 Mass. 9, it is said: "The price paid for lands purchased for the location of a railroad, designated by lines run according to the exigencies of that location, and without reference to the convenience of the land-owner, is generally affected by a consideration of the disadvantage to the whole tract resulting from the manner in which the location is made. It includes all incidental injuries to the remaining land. It is in effect a settlement of all damages which would otherwise be recoverable by

the proceedings provided for that purpose. Where the transaction is free from such considerations, so that it may fairly be regarded like an ordinary sale, between seller and purchaser, the evidence would be competent in the assessment of damages for other lands, to show the value of the land; and none the less so because the purchaser was a railroad corporation and the respondent in the proceedings."

Commenting upon *Wyman* v. *Lexington & West Cambridge R. Co.* 13 Met. (Mass.) 316, the court said: "In that case, a witness was asked and allowed to state what was given by the respondents for land next adjoining the land of the petitioner. The situation and circumstances are not stated, and no ground is shown against the propriety of the ruling of the sheriff admitting the testimony, except the fact that it was a purchase by the railroad corporation for the purposes of its location. The opinion of the court apparently assumes that it was merely a purchase of land with only the ordinary incidents of a purchase. The case did not turn upon that point; and the decision cannot be regarded as settling anything more upon this question than that such evidence *is not necessarily incompetent,* and that exceptions will not be sustained on account of a ruling admitting it, unless they show some ground upon which the court can see that the ruling was erroneous upon the facts of the case." *May* v. *Boston,* 158 Mass. 21, 32 N. E. 902; *Langdon* v. *Mayor, &c., of New York,* 133 N. Y. 636, 31 N. E. 98.

Without undertaking to say what the rule would be, as applied to a different state of facts, we are of opinion that the railway company having purchased an undivided one-half interest in real estate at a specific price, under circumstances which show that the purchase was made without compulsion, and not by way of compromise, is admissible evidence for the purpose of ascertaining the market value of the remaining undivided fee-simple one-half of the same property, in a proceeding instituted by the company for its condemnation.

But, if that were not so, we are of opinion that the railway, having itself introduced the evidence, cannot be heard to object to its consideration. In its petition, it vouches the deed from John Chamblin to it of the interest acquired from him, in which the consideration is stated to be $27,500.

Without pursuing this branch of the case further, we are of opinion that the judgment of the hustings court should be affirmed.

*Affirmed.*