## Richmond.

## LEHIGH PORTLAND CEMENT COMPANY v. COMMON-WEALTH.

### November 18, 1926.

1. TAXATION—*Assessments of Buildings and Machinery of a Cement Company—Method of Determining Value—Case at Bar.*—In the instant case, plaintiff, a cement company, contended that in determining the true value to be placed upon its buildings and machinery for taqation, the result should be arrived at by adopting what is known as the "Straight Line Depreciation Value," or, in other words, the full cost value of the property in question, as shown by the books, less the depreciation as shown by the mortality table issued by the cement industry, and so far approved by the treasury department of the national government as to permit the same to be the basis for income tax returns.

    *Held:* That this argument ignored the plain provisions of section 169 of the Constitution of Virginia, which provides that "all assessments of real estate and tangible personal property shall be at their fair market value."

2. TAXATION—*Fair Market Value.*—The fair market value of property is the price it will bring when offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of having it.

3. TAXATION—*Assessments of Buildings and Machinery of a Cement Company—Method of Determining Value—Case at Bar.*—In the instant case, plaintiff, a cement company, contended that in determining the true value to be placed upon its buildings and machinery, the court should have made its valuation upon the basis of the plaintiff's book values of buildings and machinery.

    *Held:* That while in the absence of fraud or mistake the books are presumed to reflect the market value, this presumption may be rebutted by showing that, on account of market fluctuations or other causes, the true market value is more or less than the book values.

4. TAXATION—*Assessments—Fair Market Value—Section 169 of the Constitution of 1902.*—The rule laid down in section 169 of the Constitution of 1902 that "all assessments of real estate and tangible personal property shall be at their fair market value," is the only legal rule

provided by law for the assessment of real estate and tangible personal property situated in this Commonwealth.

5. TAXATION—*Uniformity—Sections 168 and 169 of the Constitution of 1902.*—While it is true that section 169 of the Constitution of 1902 provides for the assessment of real estate and tangible personal property at their fair market value, this section must be construed in connection with section 168; and where a material, systematic, intentional discrimination is shown in the assessment of property, this is violative of the due process clause of the fourteenth amendment of the Constitution of the United States.

6. TAXATION—*Assessments—Uniformity—Constitution of United States.*—The purpose of the equal protection clause of the fourteenth amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional systematic undervaluation by State officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property.

7. TAXATION—*Uniformity—Fourteenth Amendment—Right of Taxpayer to Relief—Case at Bar.*—While the fact that the lands of one or a few taxpayers are assessed at fifty per cent of its market value, or at any other assessment below its market value, can furnish no reason for reducing the assessment of other lands to a similar valuation; yet, where it is shown that a material, systematic and intentional discrimination has been made against an applicant for relief, whereby his property has been assessed at one hundred per cent of its market value, while all other property of a like kind has been assessed at only fifty per cent of its market value, and especially where (as in the instant case) this has been done under the authority and by the direction of the State board having control over such assessments, this is in violation of the fourteenth amendment of the Constitution of the United States.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding to correct an alleged erroneous assessment for taxes. Judgment for the Commonwealth. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Legh R. Page* and *J. Vaughan Gary*, for the plaintiff in error.

*John R. Saunders, Attorney-General, E. Warren Wall, J. M. Perry* and *H. H. Kerr*, for the defendant in error.

Campbell, J., delivered the opinion of the court.

This writ of error was granted by one of the judges of the appellate court, on the petition of the plaintiff in error (hereinafter called plaintiff), to correct an alleged erroneous assessment of taxes upon its property by the Circuit Court of Augusta county, for the year 1925.

The proceeding was instituted by the commissioner of the revenue of Pastures magisterial district, under the authority of section 2238 of the Code of 1919, which provides, amongst other things, that the representative of the State Corporation Commission, generally known as the "Mineral Land Assessor," shall, at the time in each year when assessments of lands are being made, in conjunction with the commissioner of the revenue, make an assessment upon all property and interests required to be separately assessed, and also upon the improvements, fixtures and machinery thereon.

It is further provided in this section that "in case of disagreement between the two, the question at issue shall be referred to the circuit court, or the judge thereof, wherein the land is situate, either in term time or vacation, after not less than ten days notice from the mineral assessor to the commissioner of the revenue, or from the commissioner of the revenue to the mineral assessor, and the clerk of the court shall summon such witnesses as may be required by * * *," etc.

The commissioner of the revenue and the mineral assessor failing to agree upon a proper assessment of plaintiff in error's property, the matter was, upon the initiative of the commissioner, submitted to the court for determination.

Plaintiff in error, having received notice of the proceedings, appeared, by counsel, at the hearing and moved the court that it be made a party defendant, agreeing that it would waive its statutory right to make a motion to correct the assessment after the land books were made up, in order that the entire matter should be disposed of in one hearing.

After granting the motion of the plaintiff in error, the court proceeded to hear the case upon the merits.

After consideration, the court ordered an assessment of plaintiff's property for the year 1925, as follows:

| | |
|---|---:|
| Land, | $ 10,000.00 |
| Minerals, | 6,000.00 |
| Building and machinery to be assessed as real estate, | 542,000.00 |
| Capital, | 464,052.00 |

The plaintiff offers no objection to the assessed valuation of its land, minerals and capital; therefore, the only point in controversy is the assessed valuation of plaintiff's buildings and machinery to be assessed as real estate.

[1] It is the contention of the plaintiff that the assessment upon its buildings and machinery should be based upon the same ratio of its true value as the other real estate in Augusta county, and that, in determining the true value to be placed upon buildings and machinery, the result should be arrived at by adopting what is known as the "Straight Line Depre-

ciation Value," or, in other words, the full cost value of the property in question, as shown by the books, less the depreciation as shown by the mortality table issued by the cement industry, and so far approved by the treasury department of the national government as to permit the same to be the basis for income tax returns.

We have followed with keen interest the able argument of counsel for the plaintiff, and feel impressed that in most cases an assessment based upon 100 per cent of the original value of the taxable property, less annual depreciation, as denoted, would afford an equitable basis of taxation. But this argument ignores the plain provisions of section 169 of the Constitution of Virginia, which provides that "all assessments of real estate and tangible personal property shall be at their fair market value."

[2] In *Seaboard Ry. Co.* v. *Chamblin,* 108 Va. 42, 60 S. E. 727, it is said: "The fair market value of property is the price it will bring when offered for sale by one who desires, but is not obliged, to sell, and is bought by one who is under no necessity of having it."

That the provisions of the Constitution, in this respect, are more observed in the breach than in the execution, is a matter of which the courts might well take judicial notice.

It appears in proof, in the instant case, that the assessor of lands in 1920 of Pastures district of Augusta county, in which plaintiff's plant is situated, was instructed by the State Tax Board, in making his assessment of land, to assess same at fifty per cent of actual values. This was done in order to make the assessments throughout the State more equal and uniform, it being realized that in many of the counties the assessments were abnormally low.

[3] To further sustain its contention that the circuit court should have made its valuation upon the basis of plaintiff's book values of buildings and machinery, the case of *Thornhill Wagon Co.* v. *Commonwealth,* 144 Va. 194, 131 S. E. 445, is relied on. This case is not in point. The question there discussed related to the assessment of intangibles. In holding that the trial court erred in deciding that the book values reported by the examiner of records reflected the fair market value of the intangible property assessed, Judge West said: "The entries on the books of an industrial company are not conclusive upon the commissioner of the revenue, examiner of records, or other assessing authority, as to the fair market value of the items of property which are to be assessed as capital. Where the books are properly and accurately kept, and there is no evidence of fraud or mistake, they are presumed to reflect such value; but this presumption may be rebutted by showing that the fair market value of the assets of the company, on account of market fluctuations or other causes, is less than the value at which they are carried on the company's books."

[4] Whatever the rule may be in other jurisdictions, we are of the opinion that the rule laid down in section 169 of the Constitution is the only legal rule provided by law for the assessment of real estate and tangible personal property situated in this Commonwealth.

[5] We come now to a consideration of the assignment of error, that the trial court erred in its assessment for the reason that the property of plaintiff is assessed at a higher valuation than other property of like nature.

The contention that there is an inequality in the assessment of property in Augusta county is borne

out by the record. This being true, we are confronted with the question: Is the plaintiff entitled to the relief sought?

Section 168 of the Constitution reads as follows: "All property, except as hereinafter provided, shall be taxed; all taxes, whether State, local, or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

The sole object of this provision of the Constitution is to distribute the burdens of taxation evenly and equitably. While it is true that section 169 of the State Constitution provides for the assessment of real estate and tangible personal property at their fair market value, this section must be construed in connection with section 168; and where a material, systematic, intentional discrimination is shown in the assessment of property, this is violative of the due process clause of the fourteenth amendment of the Constitution of the United States.

In *Sioux City Bridge Company* v. *Dakota County*, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979, the question under consideration was whether the taxing authorities of the State of Nebraska and Dakota county, in assessing taxes against the bridge company upon that part of its bridge across the Missouri river at Sioux City, deprived the bridge company of due process of law and denied it the equal protection of the laws, in violation of the fourteenth amendment. That part of the opinion of the Supreme Court of Nebraska pertinent to the question under discussion is as follows:

"It is finally urged that this court should reduce the true value of the bridge as found by the court to fifty-five per cent of such value, for the reason that other

property in the district is assessed at fifty-five per cent of its true value, and that it would be manifestly unjust to appellant to assess its property at its true value while other property in the district is assessed at fifty-five per cent of its value.

"While undoubtedly the law contemplates that there should be equality in taxation, we are of the view that the plan of equalization proposed by appellant is not the proper remedy. The rule is now settled by a recent decision of this court that when property is assessed at its true value, and other property in the district is assessed below its true value, the proper remedy is to have the property assessed below its true value raised, rather than to have property assessed at its true value reduced. *Lincoln Telephone & Telegraph Company* v. *Johnson County*, 102 Neb. 254, 166 N. W. 627. In the argument of appellant the soundness of this ruling is assailed, and authorities in other jurisdictions are cited which seem at variance with our holding. We are not willing, however, to recede from the rule of that case."

In reversing the judgment of the State court, Mr. Chief Justice Taft said:

"In the case of *Sunday Lake Iron Co.* v. *Wakefield Tp.*, 247 U. S. 350, 352-353, 38 Sup. Ct. 495, 62 L. Ed. 1154, this court said:

[6] " 'The purpose of the equal protection clause of the fourteenth amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional systematic undervaluation by State officials of other taxable property in the same class contravenes the constitutional right

of one taxed upon the full value of this property. *Raymond* v. *Chicago Union Traction Company*, 207 U. S. 20, 35, 37 [28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757].'

"Analogous cases are *Greene* v. *Louisville . & Inter-urban R. Co.*, 244 U. S. 499, 516, 517, 518, 37 Sup. Ct. 673, 61 L. Ed. 1280 [Ann. Cas. 1917E, 88]; *Cummins* v. *National Bank*, 101 U. S. 153, 160, 25 L. Ed. 903; *Taylor* v. *Louisville & N. R. Co.*, 88 Red. 350, 364, 365, 372, 374, 31 C. C. A. 537; *Louisville & N. Ry. Co.* v. *Bosworth* (D. C.), 209 Fed. 380, 452; *Washington Water Power Co.* v. *Kootenai County* (C. C. A.), 270 Fed. 369, 374.

"The charge made by the bridge company in this case was that the State, through its duly constituted agents, to-wit, the county assessor and the county board of equalization, improperly executed the Constitution and taxing laws of the State, and intentionally and arbitrarily assessed the bridge company's property at 100 per cent of its true value and all other real estate and its improvements in the county at fifty-five per cent.

"The Supreme Court does not make it clear whether it thinks the discrimination charged was proved or not, but assuming the discrimination, it holds that the bridge company has no remedy, except 'to have the property assessed below its true value raised rather than to have property assessed at its true value reduced.' The dilemma presented by a case where one or a few of a class of taxpayers are assessed at 100 per cent of the value of their property in accord with a constitutional or statutory requirement, and the rest of the class are intentionally assessed at a much lower percentage in violation of the law, has been often dealt with by courts and there has been a conflict of

view as to what should be done. There is no doubt, however, of the view taken of such cases by the federal courts in the enforcement of the uniformity clauses of State statutes and Constitutions, and of the equal protection clause of the fourteenth amendment. The exact question was considered at length by the Circuit Court of Appeals of the Sixth Circuit in the case of *Taylor* v. *Louisville & N. R. Co.*, 88 Fed. 350, 364, 365, 31 C. C. A. 537, and the language of that court was approved and incorporated in the decision of this court in *Greene* v. *Louisville & Interurban R. Co.*, 244 U. S. 499, 516, 517, 518, 37 Sup. Ct. 673, 61 L. Ed. 1280 [Ann. Cas. 1917E, 88]. The conclusion in these and other federal authorities is that such a result as that reached by the Supreme Court of Nebraska is to deny the injured taxpayer any remedy at all because it is utterly impossible for him by any judicial proceeding to secure an increase in the assessment of the great mass of underassessed property in the taxing district. This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent of its true value is to have his assessment reduced to the percentage of that value at which others are taxed, even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of law. In substance and effect the decision of the Nebraska Supreme Court in this case upholds the violation of the fourteenth amendment to the injury of the bridge company. We must, therefore, reverse its judgment."

It follows from what has been said that we are of

the opinion that the assessment made by the trial court of plaintiff's property should be corrected.

In the brief filed by the Attorney General and counsel for the State Tax Commission it is said: "The Commonwealth does not feel that it would be justified in insisting upon a higher valuation of the company's plant than that placed upon it by the Corporation Commission."

There is a discrepancy between the figures of the plaintiff and the Corporation Commission. This, however, we do not consider as material.

[7] To reiterate, we are of the opinion that the fact that the lands of one or a few taxpayers are assessed at fifty per cent of its market value, or at any other assessment below its market value, can furnish no reason for reducing the assessment of other lands to a similar valuation; yet, where it is shown that a material, systematic and intentional discrimination has been made against an applicant for relief, whereby his property has been assessed at 100 per cent of its market value, while all other property of a like kind has been assessed at only fifty per cent of its market value, and especially where (as in the instant case) this has been done under the authority and by the direction of the State board having control over such assessments, this is, as stated, in violation of the fourteenth amendment of the Constitution of the United States.

From a fair consideration of the evidence before us, we are therefore of the opinion that the property of the plaintiff should be assessed as follows:

| | |
|---|---|
| Land, | $ 10,000.00 |
| Minerals, | 6,000.00 |

Buildings and machinery to be
    assessed as real estate,_____$  403,599.50
Capital,_____    464,052.00

The judgment of the trial court will be reversed and annulled, and this court will enter such judgment as that court should have entered.

*Reversed.*