# Staunton

CITY OF ROANOKE V. BRAXTON D. GIBSON, ET ALS.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Robert C. Jackson,* for the plaintiff in error.

*Dillard, Moomaw & Dillard,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

This is a proceeding brought for the correction of an

assessment for taxation of certain real estate in the city of Roanoke. That assessment, it is claimed, was erroneous and excessive.

In orderly procedure a board of assessors reassessed generally all of the real estate in Roanoke. This assessment took effect as of January 1, 1931, and is to continue in force for four years. It covers, of course, the Gibson property, the owners of which were not satisfied, and appealed as a matter of right to the board of equalization. That board, after hearing, affirmed the judgment of the assessors. Later an appeal was taken to the Hustings Court.

The land in controversy is located on the south side of Church avenue, 170 feet west of Jefferson street. It fronts on Church avenue 135.82 feet and extends back between parallel lines to Luck avenue. The block in which it is situate is bounded on the north by Church avenue, on the east by Jefferson street, on the south by Luck avenue, and on the west by Henry street. It is a rectangular lot in the middle of the block and extends from Church avenue through to Luck avenue.

The land itself was valued at $105,260, the buildings at $31,700, making in the aggregate $136,960. No complaint was made of the assessment put upon the buildings, but only of that put upon the land. The trial court thought it excessive and reduced it to $92,500.

J. W. Boswell is a realtor of wide experience and is agent for the Gibson estate. He was himself five times city assessor. His estimate in gross is $175,000—$150,000 for the land and $25,000 for the buildings. Later he was inclined to reduce the value of the land to $136,000 and to correspondingly increase the value of the buildings. He further tells us that it was a part of the general plan of reassessment to value the land at what it was fairly worth and to reduce the estimates thus made by fifty per cent.

As evidence of inequality in valuation he calls attention to a lot on the southwest corner of Jefferson street and

Church avenue. This lot fronts 100 feet on Jefferson street and extends back 170 feet on Church avenue. The land is assessed at $198,990. Next, in support of his estimates, he calls attention to a lot in the middle of this block, fronting fifty feet on Jefferson street. That land is assessed at $62,510. These Jefferson street properties, this witness says, are worth four times as much as the Church avenue property. In other words, if the Church avenue lot is worth $773 a front foot, these Jefferson street properties should be assessed at over $3,000 a front foot. He also calls attention to the fact that two months' rent from the Jefferson street properties is enough to pay a year's taxes, while it would take four months' collections to pay taxes on this Church avenue property.

Mr. M. C. Franklin is also a dealer in real estate. He puts the value of the land alone at $190,400, and with improvements added at $225,000. He states that in his judgment a lot in the middle of this block fronting on Church avenue is worth about one-third of what one of like size fronting on Jefferson street would be.

S. A. Duerson, too, is a realtor, and thinks this Gibson land alone should be valued at $185,300. He thought that a lot in the middle of Church avenue is worth about thirty-seven and one-half per cent of what it would be if it was similarly located on Jefferson street.

It was thought by many that the previous assessments had been made in a somewhat haphazard fashion, and to the end that some systematic plan might be adopted a corporation which specializes in this work, the Manufacturers' Appraisal Corporation, was retained to make a survey of the entire city. That corporation uses what is known as the Somers system, a system now very generally adopted. It is not necessary that we describe it in detail. Roughly speaking, it adopts as a base measure of value a unit of land one foot wide and 100 feet deep. If the lot is deeper, graduated values are added; if less, that is taken into account. Additions are made to corner lots. First is taken what is deemed to be the most valuable land

in the city. By it the base unit is fixed. Other estimates are graded away from this maximum according to the judgment of the appraising company. Many things are taken into consideration—present conditions, shifting centers of trade, contemplated improvements, etc. Independent of its work the appraisers themselves made a careful survey and checked their conclusions with those reached by the appraising corporation. As we have seen, from their final judgment, an appeal lay to the board of equalization.

M. F. Cleaton is an experienced real estate dealer and was chairman of the board of assessors, the other members being E. M. Herringdon and Joseph E. Coxe. Mr. Herringdon is a contractor and Mr. Coxe is a retired comptroller of the Norfolk and Western Railway. These gentlemen devoted six or seven months to this work. He tells us that they carefully valued each lot and its improvements and undertook to assess ratably all properties throughout the city.

The substance of his statement is that after checking and rechecking all properties they did what seemed to be right, and in the instant case did what he believes is right.

T. Allen Flora is also in the real estate business. He is of the opinion that the assessment was fair and said that the Gibson property in light of the fact that it ran back to Luck avenue was worth about $1,700 a front foot at the time of the appraisal, and that Jefferson street property is worth about twice as much as Church avenue property.

T. W. Fugate is in the mortgage loan business. He is of opinion that this Church avenue property is worth $1,250 or $1,300 a front foot.

Mr. Spindle is in the real estate business. He puts the value of the Gibson land at $190,400. He said that assuming that lots on Church avenue and Jefferson street were the same depth the Jefferson street property was worth two and one-half times what the Church avenue property

was. But he calls attention to the fact that the Gibson lot is deeper than the Jefferson street lots.

To guide us we have the opinions of these gentlemen, the judgment of the board of assessors and the judgment of the board of equalization. Estimates necessarily vary, for they are matters of opinion, and market value can be only ascertained by putting property to the test of a market.

Section 169 of the State Constitution provides that real estate shall be assessed at its fair market value. But this provision is to be read in connection with section 168, which declares that all taxes on property of the same class shall be uniform. Any system of assessments which taxes all citizens ratably and alike meets the test of our Constitution and of the 14th Amendment to the Federal Constitution. *Sunday Lake Iron Co.* v. *Wakefield Township,* 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154. And it is not important if the assessment be high or low provided it is uniform. 61 C. J. 641; *Sioux City Bridge Co.* v. *Dakota County, Neb.,* 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979. It is not enough to show that the assessment is excessive as compared with an assessment against *A,* or against *B.* It must plainly appear that it is out of line with methods of valuation adopted in the taxing district as a whole.

*Sloman-Polk Co.* v. *City of Detroit,* 261 Mich. 689, 247 N. W. 95, 96, is a case in which relief was refused, although, owing to a depressed existing market, property was valued at more than the "true cash value." That court said: "Moreover, it is not shown that plaintiff has been injured in fact, as all property has been overassessed upon the same basis. Consequently, the proportion of each parcel to the tax levy is the same as though proper assessment had been made. As plaintiff has shown no injury peculiar to itself, susceptible of practical and equitable correction by a court of equity, the decree will be affirmed, but without costs."

The burden of proof rests upon the petitioners.

A municipality cannot function unless it can meet its necessary expenses, and that it can do only through taxation. If in its ratable distribution it be fair that a certain lot should pay $100, it makes little difference to the owner if the lot be assessed at $5,000 with a two per cent rate or at $10,000 with a one per cent rate. In practice it has been the general custom in this State to undervalue property and to advance the rate, and so to a corresponding extent the letter of section 169 of the Constitution has not been observed; property has not been assessed at its market value, and an assessment in excess of market value would be no greater departure from its mandate provided these assessments were, as they must be in any case, ratable.

It is to be remembered that assessors simply value property. They have nothing to do with fixing the rate of taxation. That is based upon the city's needs.

Since these assessments rest in the opinion of men exact equality is an impossible standard. *City of Norfolk* v. *L. Snyder, ante* page 288, 170 S. E. 721; *Richmond Linen Supply Co.* v. *City of Lynchburg,* 160 Va. 644, 169 S. E. 554; *Rixey's Ex'rs* v. *Commonwealth,* 125 Va. 337, 99 S. E. 573, 101 S. E. 404; *Travelers' Ins. Co.* v. *Connecticut,* 185 U. S. 364, 22 S. Ct. 673, 46 L. Ed. 949.

"In Virginia it is settled law that there is a clear presumption in favor of the assessment as made by the assessors and the burden is upon those who seek relief to show that the value as fixed is excessive or out of proportion to other like surrounding property. *Rixey's Ex'rs* v. *Com., supra; Union Tanning Co.* v. *Com.,* 123 Va. 610, 96 S. E. 780; *Pembroke Limestone Works* v. *Com.,* 139 Va. 270, 123 S. E. 334; *Thornhill Wagon Co.* v. *Com.,* 144 Va. 194, 131 S. E. 445." *City of Norfolk* v. *L. Snyder, supra.*

This is particularly true when, as here, painstaking care was taken by the assessing bodies, fortified as it were by the expert judgment of the appraisal corporation.

Sporadic deviations from an established rule in the case of other properties are not in themselves suffi-

cient. A petitioner must show that the plan adopted generally was not applied to him. We look to the general situation in the taxing district.

It is not sufficient to show that there is some discrepancy between the value put upon petitioners' land and that put upon three lots in this block fronting on Jefferson street. Some error may have been made as to them.

It is contended that independent of variations from values put upon other lots in this block a general rule adopted by the assessors themselves has not been followed, that final figures exceed fifty per cent of the actual value of the property.

Mr. Cleaton tells us how this particular phase of their work was carried out. First, they undertook to ascertain not what was the present market value of the property, but what was "an outside or speculative value" for the years during which the assessment was to run, and that figure was afterwards reduced by half.

"To reiterate, we are of the opinion that the fact that the lands of one or a few taxpayers are assessed at fifty per cent of its market value, or at any other assessment below its market value, can furnish no reason for reducing assessment of other lands to a similar valuation; yet, where it is shown that a material, systematic and intentional discrimination has been made against an applicant for relief, whereby his property has been assessed at 100 per cent of its market value, while all other property of a like kind has been assessed at only fifty per cent of its market value, and especially where (as in the instant case) this has been done under the authority and by the direction of the State board having control over such assessments, this is, as stated, in violation of the 14th Amendment of the Constitution of the United States." *Lehigh, etc., Co.* v. *Commonwealth,* 146 Va. 146, 135 S. E. 669, 672.

We do not think the evidence is adequate to overcome the clear presumption in favor of the legality of the assessment made.

There is evidence tending to show that the general plan adopted by the assessors was not followed in this case, and there is evidence tending to show that it was. "The clear presumption in favor of the assessment" (*City of Norfolk* v. *L. Snyder, supra*), has not been overcome.

We have not lost sight of the presumptions which support the judgment of the trial court. There is practically no conflict in testimony as to facts, but only a difference in opinion.

The judgment appealed from must be reversed, and the assessment set aside by the trial court must be reinstated. It is so ordered.

*Reversed.*