## Richmond

ELMER F. SMITH, ET AL. v. CITY OF COVINGTON.

March 9, 1964.

Record No. 5713.

Present, All the Justices.

*Hale Collins*, for the plaintiffs in error.

*William E. Carson* and *Fletcher D. Watson* (*Watson & Carson*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Elmer F. Smith and Collelya Smith, his wife, applied to the court below for the correction of the 1961 assessment of certain of their real estate located in the city of Covington. They alleged that an assessment of $16,000.00 on their residence building was based upon a much higher appraisement of its fair market value than appraisements placed upon other properties of like nature in the same area; and that, therefore, there was a lack of uniformity of assessment and taxation. They prayed that the assessment be reduced to a just and fair amount and they be refunded taxes paid for the year 1961. No complaint was made as to the assessment upon the land, on which the house is located; and, therefore, the only point in controversy is the assessed valuation of the dwelling house.

The court heard the evidence *ore tenus*, denied the relief prayed for, and dismissed the petition.

Appellants excepted on the ground that the court erred in failing to take into consideration evidence of the assessments of other residences and compare those valuations with that placed upon appellants' residence.

The property in question consists of a one family residence, located on two lots of land in Fairlawn subdivision, one of the best residential sections of the city of Covington. The dwelling is a modern, air-conditioned, ranch-style house with a two-car garage, all with brick veneer, the whole being approximately 100 feet long and 30 feet wide. Its construction was completed in August. 1960.

Mrs. Via, commissioner of revenue for the city of Covington, testified that the property of the Smiths was appraised by the local board of assessors at $2,975.00 for the two lots and $40,000.00 for the house and garage, a total of $42,975.00, and assessed for taxation at 40% of those amounts at the rate of $3.00 upon each $100.00 of value, the uniform rates of assessment and taxation in the city for residential property. The house and lots were respectively assessed for taxation at $16,000.00 and $1,190.00.

Elmer F. Smith testified that he built the house by hiring labor and supervising the construction himself, and found, to his sorrow, that he spent considerably more than it would have cost if it had been built by a contractor; that the house, including "several pieces of furnishings" and "some personal things," cabinets, kitchen equipment and tables cost "in the neighborhood of $43,000.00;" that the

house was designed in accordance with the desires of himself and wife; and that $25,000.00 would be a fair market value for it, considering the fair market values placed by the assessors upon similar property in the same area. He said that he was willing to sell it for $25,000.00, if he could find a purchaser at that price.

During the taking of Smith's testimony, counsel for the city objected to the comparison of appraised valuations of other property, stating that, "What the true market value of the property in that area is has nothing to do with this particular case." The court sustained the objection, saying that the only question was as to the "true assessment of Mr. Smith's property," and it made "no difference what the other property is assessed at as long as the same rate" of 40% of appraised value was applied in making the assessments, unless it could be shown that the other dwellings referred to were the same as that of the Smiths or of "approximately the same value."

Appellants objected, and by leave of court were allowed to vouch for the record evidence showing the assessments of the other residential properties of like nature in the city of Covington.

Smith continued to testify that the assessment of his house was not in uniformity with the assessments based upon houses of like nature; and that he did not believe his house could be sold for more than $25,000.00, and that there was no demand for the larger type of house.

Appellant, Smith, identified photographic exhibits of his home and of eleven other dwellings in the same area, including one-story, one and a half story, two stories and ranch-type brick houses. Each photograph bore a notation of the assessment placed upon the dwelling, the amounts ranging from $3,740.00, to $5,400.00, $6,400.00, $7,000.00 and $7,800.00, that is, 40% of the respective appraisements of fair market value.

A. J. Tingler testified that he had been dealing in real estate for 20 or 25 years in Covington; that he had been a member of the board of assessors of that city in 1956; that he knew the fair market value of property in the Fairlawn section, including the home of appellants; and that $25,000.00 was a fair market value of the house and the two lots upon which it was situated. He added that "There are other houses there that are of equal size and quality, and some of less size and quality, and possibly one better."

A. W. Long said he had been engaged in the real estate and insurance business in Covington since 1945; that he knew the fair market value of real estate in the Fairlawn section; that he was familiar

with the Smith residence, having gone through it "room by room," and having "checked it closely" as to value for his own information; and that the fair market value of the residence was $25,000.00 and the lots $3,000.00, a total of $28,000.00. He also said that he had sold a house of the same type as the Smith residence, which compared with the latter to a certain extent, "except for land."

Another witness, Bayne, said that he was primarily engaged in the insurance business in Covington; but had also been a real estate broker and auctioneer for 18 months. He stated that he was familiar with the values of real property in Covington, "particularly in Fairlawn," especially the Smith residence; that he had been through that residence a couple of times; and he had concluded that the property and two lots were worth from $25,000.00 to $27,000.00, but not exceeding $27,000.00.

R. T. Carper and Wilbur T. Smith, two of the three members of the board of assessors which made the appraisal of the Smith property, upon which its assessment for taxation is based, testified in support of their appraisal, saying that in their opinion, it had a true market value of $40,000.00, probably more. The members of the board of assessors also constituted the local board of equalization of real estate assessments. Messrs. Carper and Smith said they had visited and inspected the Smith residence several times for the purpose of making the appraisal.

Carper, office manager of a paper mill, said that there was no building in the city of Covington "comparable" to the Smith residence; and that it was the best constructed home he had ever been in. Wilbur T. Smith, whose vocation was not given, said he was familiar with the appellants' residence, and thought there was no house in Covington to compare with it. He did not know whether anyone would pay $40,000.00 for it; that he could not purchase it at that sum, but if it were put up for sale at $25,000.00, he would try to get it for himself. Both Carper and Wilbur T. Smith were much impressed with the interior arrangements of the house and the materials used in its construction.

■ Virginia Code, 1950, § 58-1145, provides that in an application to correct erroneous assessments, "The burden of proof shall be upon the taxpayer to show that the property in question is assessed at more than its fair market value, or that the assessment is not uniform in its application."

The determination of this case is controlled by the rules we have

heretofore stated in *Lehigh, etc., Co.* v. *Commonwealth,* 146 Va. 146, 135 S. E. 669; *Washington Bank* v. *Washington County,* 176 Va. 216, 10 S. E. 2d 515; *Skyline Swannanoa* v. *Nelson County,* 186 Va. 878, 44 S. E. 2d 437; and *Woman's Club* v. *City of Richmond,* 199 Va. 734, 101 S. E. 2d 571.

In *Skyline Swannanoa* v. *Nelson County, supra,* 186 Va., 878, 881, we said:

"Sections 168 and 169 of the Constitution of Virginia provide that all real estate and tangible personal property shall be assessed at its fair market value and that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the taxes. The two sections must be construed together. The dominant purpose of these provisions is to distribute the burden of taxation, so far as is practical, evenly and equitably. If it is impractical or impossible to enforce both the standard of true value and the standard of uniformity and equality, the latter provision is to be preferred as the just and ultimate end to be attained. *Norfolk* v. *Snyder,* 161 Va. 288, 170 S. E. 721; *Lehigh Portland Cement Co.* v. *Commonwealth,* 146 Va. 146, 135 S. E. 669; * * *."

In *Woman's Club* v. *City of Richmond, supra,* 199 Va., at page 738, referring to the above statement, we find this:

"But that does not mean that property in any taxing jurisdiction may be assessed in excess of and without relation to its fair market value as required by the Constitution. It means only that a taxpayer whose property is assessed at its true market value has a right to have the assessment reduced to the percentage of that value at which others are taxed so as to meet the uniformity required by § 168 of the Virginia Constitution as well as by the Equal Protection Clause of the Fourteenth Amendment. *Lehigh, etc., Co.* v. *Commonwealth, supra.* (146 Va., 146.)"

■ The crucial question in this case is whether the appraisement of the value of appellants' residence by the board of assessors was in uniformity with its appraisements of the value of other properties having like characteristics and qualities, located in the same area. There is no question of lack of uniformity in the percentage applied to the appraisement for the purpose of assessment, or of the rate of taxation.

There are many factors to be considered in arriving at the fair market value of property. While size and cost of the property may be factors to be given weight, there are many other factors which tend to increase or diminish such value; for instance, the design, style,

location, appearance, availability of use, and the economic situation prevailing in its area, as well as other circumstances.

As we have seen, the assessors failed to give consideration to the appraisements of the true market value of other properties of a like or similar nature to that of appellants. Appellants were entitled to have the same yardstick which measured the market value of the other properties applied to their property. Obviously, if the appraisal of their property is out of line with appraisals made of the property of others, the assessments based on 40% of the appraisements lack uniformity. It is difficult to see how it could be determined whether or not the assessment of appellants' residence was uniform with the assessments placed upon other properties of like nature and classification, without considering the appraisements and assessments on such other properties.

Here, three experienced real estate agents testified that the fair market value of appellants' dwelling and lots was between $25,000.00 and $28,000.00, all that the owner if willing to sell, could expect to receive from a buyer able and desirous of purchasing the property.

"The market value of property is the price it will bring when offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it." *Seaboard Air Line Ry.* v. *Chamblin*, 108 Va. 42, 46, 60 S. E. 727; *Lehigh, etc., Co.* v. *Commonwealth, supra,* 146 Va., at page 150; *Norfolk* v. *Snyder,* 161 Va. 288, 291, 170 S. E. 721; *Skyline Swannanoa* v. *Nelson County, supra,* 186 Va., at page 885; *Woman's Club* v. *City of Richmond, supra,* 199 Va., at page 737.

The evidence clearly shows that the trial court refused to give consideration to assessments made upon property belonging to others than appellants, or to the evidence of appellants' witnesses, and confined the issue to "the true assessment of Mr. Smith's property," because the uniform rate of 40% of appraised value was applied in making all of the assessments.

We mean no reflection upon the members of the board of assessors. We realize that their judgment was entitled to consideration; but we also realize that no rule of thumb can be applied to values, and that it is but natural to expect that the assessors would be reluctant to overrule their own judgments. Even if appellants' property was the "best residence" in Covington, and was appraised at its true market value, they were entitled to have that appraisement reduced to the percentage of that value at which the property of others was appraised, so as to meet the uniformity required under our Constitution and

laws. *Woman's Club* v. *City of Richmond, supra,* 199 Va., at page 738.

We hold that under the evidence, the assessment of appellants' dwelling house was out of line with the assessments of like and similar property, and that, therefore, there was a lack of uniformity; that the assessment should have been 40% of a total appraisement of $28,-000.00 on both dwelling and lots, that is, $11,200.00, including the sum of $1,190.00 on the lots. This conclusion entitles appellants to recover the excess taxes paid for the year 1961.

We, therefore, reverse the judgment of the trial court, and remand the case for the entry of an order granting appellants relief, in accordance with the views herein expressed.

*Reversed and remanded.*