## CIRCUIT COURT OF LEE COUNTY

Verrill Clark

v.

Lee County

Mary Kimsey England

v.

Lee County

March 9, 1981

Case No. 80-003A

By JUDGE S. W. COLEMAN, III

Verrill Clark and Mary A. Kimsey England filed their separate petitions to correct alleged erroneous tax assessments on their real estate in Lee County for the general reassessment of 1979. While the evidence on both petitions was presented in a consolidated hearing, the merits of the petitions must be considered independently. However, the legal bases for both claims rest upon the same legal issues and the following discussion of the applicable legal principles will apply to both.

The petitions are filed pursuant to § 58-1145 of the Code, as amended, which provides, in part:

> In such proceeding, the burden of proof shall be upon the taxpayer to show that the property

in question is assessed at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal, but it shall not be necessary for the taxpayer to show that intentional, systematic and willful discrimination has been made.

Article X, § 1, of the Constitution of Virginia provides that all taxes shall be uniform upon the same class of subjects within the territorial limits of the taxing authority. Article X, § 2, of the Constitution of Virginia provides that all assessments of real estate shall be at fair market value. The foregoing statute providing for judicial correction of an erroneous assessment recognizes that such assessments may be challenged for either of the Constitutional grounds that such assessments were not uniform in their application or were at more than market value and further provides as an additional challenge that the assessment is otherwise invalid or illegal. In such proceedings, there exists a clear presumption favoring the validity of the assessment. *American Viscose Corp. v. City of Roanoke*, 205 Va. 192, 195, 135 S.E.2d 795, 797 (1964). The taxpayer applying for relief has the burden of clearly establishing that the assessment is excessive. *Board of Supervisors of Fairfax Co. v. Leasco Realty, Inc.*, 221 Va. 158 (1980).

Have either or both of the taxpayers overcome the "clear presumption favoring the validity of the assessments" by "clearly establishing that the assessments are excessive"? Relying almost exclusively upon the holding in the *Leasco* case, *supra*, Lee County contends that neither of the petitioners have clearly established a lack of uniformity in the methodology of assessment as to the properties involved nor have they established that either assessment exceeded fair market value. To fully understand the *Leasco* case, one must consider it along with the many other Virginia cases dealing with alleged erroneous assessments of real estate. The challenge in *Leasco* was based on the allegation that the assessments were not uniform and there was no specific assertion that the assessments exceeded fair market value or were otherwise invalid or illegal. In *Leasco* the sole evidence presented to establish

nonuniformity in the method of assessment was a comparison of the valuations between the Leasco property and what the trial court found to be a comparable tract owned by Lerner/Ammerman. The county contended in *Leasco* that nonuniformity in the method of assessment and fair market value are separate and distinct concepts upon which relief may be sought and there is no interplay between the two. However, the Supreme Court said:

> Considerations of uniformity should not be divorced from the concept of fair market value; the two constitutional principles must be read and construed together. But if it is impractical or impossible to enforce both the standard of true value and the standard of uniformity, the latter provision is to be preferred as the just and ultimate end to be attained. *Smith v. City of Covington*, 205 Va. 104, 108, 135 S.E.2d 220, 222-23 (1964). Even though value is always important in questions dealing with real estate taxes, uniformity should not be "irrevocably tied to value . . ." Consequently, when the taxpayer attacks an assessment alleging nonuniformity *and there is no showing that disparate or unlawful methods have been employed in the appraisal process, it is not sufficient to show the valuation is excessive as compared with another valuation of like property; it must plainly appear that the appraisal upon which the assessment was made is out of line generally with appraisals of other neighborhood properties, which in character and use bear some relation to that of the taxpayer.* Washington County National Bank v. Washington County, 176 Va. at 218, 10 S.E.2d at 516; *City of Roanoke v. Gibson*, 161 Va. 342, 347, 170 S.E. 723, 725 (1933). (Emphasis supplied.) *Leasco, supra* at 171-172.

The *Leasco* case is a rather narrow ruling which must be considered on the limited facts of that case. The Supreme Court held that the evidence was undisputed that the facts failed to disclose a lack of uniformity

in the method of assessment of the subject property and other property in the county. The real estate appraisal techniques were uniformly applied. The showing of some disparity between the Leasco property and one other property (Lerner/Ammerman) was insufficient as a matter of law to establish lack of uniformity in the sense that such "must be read and construed together" with the concept of fair market value.

> Inequalities of valuation are inevitable; to avail . . . [the disparity] must be striking and must be made to appear by a clear preponderance of the evidence. Before relief can be given, it must appear that the assessment is out of line generally with other neighborhood properties, which in character and use bear some relation to that of a petitioner. It is not enough to show that it is valued above a rate apportioned to another near-by lot. The inequality must be not only out of line but out of line generally. (Emphasis supplied.) Washington County National Bank v. Washington County, supra at 218 and 222.

The carefully worded language in the Leasco case emphasizes that only one other tract was used for comparison, that there were significant differences in the two tracts compared, and the Lerner/Ammerman assessment relied upon was the result of an unappealed judicial determination of fair market value rather than on the assessment established by a general reassessment. A well-established line of cases in Virginia suggests that in Leasco had a comparison of other neighborhood properties shown by a clear preponderance of the evidence a striking disparity in the assessment of various properties, which in character and use bear some relation to that of the petitioners, then the result may have been different because the concept of fair market value is integrally related to the concept of uniformity. But, as Leasco further points up, if the evidence indicates that there has been a uniform method of assessment but significant disparities in the fair market value which are impractical or impossible to resolve, then the standard of uniformity is to be preferred as

the just and ultimate end to be attained. *Smith v. City of Covington*, 205 Va. 104, 108, 135 S.E.2d 220, 222-23 (1964). Thus, the principles to be applied in the petitioners' cases will be has the clear preponderance of the evidence overcome the strong presumption that the assessments are valid by establishing either that the method of assessment of the petitioners' property was not the method uniformly applied to other properties considering the interplay with fair market value or does it plainly appear that the *appraisal* upon which the assessment was made is out of line generally with appraisals of other neighborhood properties similar in character and use. If only the latter can be established, then the court must determine whether a disparate appraisal can practically or possibly be reconciled without doing violence to the concept that a uniform method of assessment shall be applied to similar properties.

Applying the foregoing principles to the merits of the cases at bar, the evidence consists of the testimony of Silas H. Glass, Lee County Commissioner of the Revenue, the two petitioners, and W. R. Hines, a licensed real estate salesman qualified to determine real estate values in Lee County. No witness who actually participated in or knew the methodology used for the 1979 general reassessment testified as to the appraisal techniques employed in evaluating the properties. However, based upon his knowledge of the general reassessment, the Commissioner of Revenue termed the method as "unusual." He characterized the reassessment as an "office assessment" conducted in the basement of the courthouse. He opined that the three member Board of Assessors did not inspect "a dozen or more different ones of these houses." (pp. 32-36.) He went on to suggest that the Board of Assessors for the 1979 general reassessment took the appraisals from the 1975 general reassessment which was conducted by state appraisers (a proper matter for consideration along with other factors) and then in the 1979 general reassessment made some "drastic reductions" for no apparent reasons (p. 36). The Commissioner further surmised (p. 34) that the method of appraisal employed would be unacceptable under the Virginia Code. (*See* § 58-790 of the Code).

The properties which Mr. Glass used to demonstrate that drastic reductions had been made were the same proper-

ties which were used as "comparables" for the subject properties. In addition, Mr. Glass presented the land cards of other properties in the neighborhood showing the basis for appraisal although all were not referred to by the witnesses as properties for comparison. Mr. Glass made the conclusory statement that insofar as he knew the same method of assessment was used for all properties, but it is apparent that he does not know the actual method used and he is perplexed as to certain of the results achieved. Mr. Glass suggests, and the history derived from an analysis of the land cards of the Commissioner confirm his conclusions, that the state appraiser in 1975 appraised the properties and in that same year, the County Board of Assessors reduced certain assessments with no apparent justification. Then in 1979, there were further reductions by the local Board of Assessors without any change in circumstances to the property.

Neither the petitioners nor Mr. Hines testified directly that a different methodology of assessment was applied to the subject property and the other properties; they obviously did not know what method was employed, but they imply that such disparate results may suggest non-uniformity in method. And, as pointed out above from *Leasco*, the concepts of fair market value and uniformity should not be divorced from one another. A significant disparity in fair market evaluations may have some interrelation with the uniformity of the method of assessment utilized. Neither the petitioners nor Mr. Hines testified that the assessed fair market value of any of the properties exceeded their actual fair market value.

Have either of the petitioners clearly established that there was not uniformity in the method of assessment employed in evaluating their real estate in relation to other properties of a similar character or use sufficient to overcome the clear presumption that the assessment is valid? Or, have either of the petitioners established that the assessment was otherwise invalid or illegal? Mr. Glass raises serious doubts as to whether the real estate appraisal techniques employed by the Board of Assessors in 1979 for the general reassessment were proper or valid. While there is a paucity of evidence as to the methodology used, the record suggests that on a random basis, "drastic reductions" were made in certain assessments

without reason or apparent justification. But, the petitioners do not challenge or contend that the entire 1979 general reassessment was invalid or illegal and should be set aside. They seek relief only as to their individual properties and assessments and not an invalidation of the entire reassessment. The court is of the opinion that while doubts have been raised as to whether the method of appraisal was uniformly applied, the petitioners have failed to meet their burden of proof by clearly establishing that the method used was not uniformly applied to their properties. The presumption of validity that the method of assessment was uniformly applied has not been overcome based upon the evidence presented nor was the method shown to be otherwise invalid or illegal.

Have either of the petitioners clearly established that their properties were appraised in excess of the fair market values? Again, the presumption of validity of the assessments must be overcome. While no witness testified that the appraisals were in excess of *actual* fair market value, there were witnesses who testified that the properties exceeded the fair market value when compared to the assessed values of other properties similar in character and use. However, as was noted in the *Washington County National Bank* case, *supra*, assessed fair market value may be less than actual market value, but to comport with the constitutional and statutory requirements the assessed valuations of other comparable property must bear a reasonable relation to one another taking into account that "[i]nequalities are inevitable . . . [and that] values are matters of opinion, to which no yardstick can be applied" (at p. 222). Thus, were the assessed values placed upon either of the petitioner's property in excess of the assessed values of "other neighborhood properties which in character and use bear some relation to that of [the] petitioner[s]. It is not enough to show that it is valued above a rate apportioned to another nearby lot. The inequality must be not only out of line *but out of line generally.*" (Emphasis supplied.) *Washington County National Bank v. Washington County, supra,* at p. 218.

The court is of the opinion that the properties relied upon by the petitioners and W. R. Hines consisting of the Chadwell, Fugate, Brooks, Littrell and Davis properties were neighborhood properties similar in use and charac-

ter from which comparative fair market values could be relatively determined. All the properties and the improvements thereon had sufficiently striking similar characteristics from which one familiar in real estate appraisals could make comparative evaluations. The real estate cards of the Commissioner of Revenue, as well as the testimony of the witnesses, touched upon the many points of comparison between the various tracts. The petitioner Verrill Clark and W. R. Hines drew particular comparison between her property and that of Chadwell, Brooks and Fugate, and, based upon comparative values, Mr. Hines estimated that if the Chadwell property was valued at $22,000.00, then the Clark property should be valued at $15,000.00 rather than its assessed value of $22,200.00. Similarly, the petitioner England and W. R. Hines drew comparisons between the England property and that of Brooks and Chadwell, and Mrs. England drew particular comparisons with the Littrell property, and, based upon specific comparisons between Brooks and Chadwell, Mr. Hines estimated that the England property was close in value to that of Chadwell at $22,000.00, rather than its assessed value of $35,000.00. The comparisons adopted by the petitioners and W. R. Hines and their rationale adopted appear to be sound; however, the basic properties used as comparables possess an infirmity similar to the property used in the *Leasco* case for comparison (the Lerner/Ammerman tract). In *Leasco*, the Lerner/Ammerman tract assessment relied upon for comparison had been reduced by judicial determination rather than by the appraisal method of the assessor generally utilized in Fairfax County, and that decision was not appealed. The Supreme Court in *Leasco* (p. 172) noted that the comparison was based on a court-ordered valuation. In the cases at bar, the valuation of the properties used for comparisons were derived at by a Board of Assessors, but the action of the Assessors cannot be disregarded in determining whether their evaluations actually reflect comparable fair market values. The 1975 valuations established by the state appraisers reflect the same comparative ratios as suggested by Mr. Hines, the Clark property being $22,700.00, the England property $32,000.00, and the Littrell property $32,600.00, the Chadwell property $36,000.00 and the Brooks property $29,000.00. However, in 1979 there were "drastic reductions" in the assessed

values of the properties which were here utilized as the bases for comparisons, but "the calculations used in determining the assessed values of such property and improvements" are not shown on the property appraisal sheets. *See*, § 58-817.1 of the Code.

Thus, the court is confronted with the perplexing situation based upon the history of the comparable properties that their evaluations appear to bear no meaningful relation to their actual fair market value when even compared to one another. To the contrary, it appears that the assessed value of some of the properties used for comparison are far out of line with the actual fair market value of another tract which was also used for comparison. It is impossible for this court to say which of the tracts used would be a fair basis for comparison. It must be borne in mind that the problem which confronts the court is that the properties selected for comparison as to fair market value do not, in fact, appear to reflect fair market value because of unexplained "drastic reductions" throughout the appraisal history of the properties. While these taxpayers should not be made to suffer a disproportionate burden of the tax obligation by having their property excessively assessed, nevertheless, this court cannot conclude from the comparisons offered that the assessments are out of line *generally* with other neighborhood properties or to the extent that such assessments are out of line, which properties can fairly be determined as a standard for adjustment or awarding relief.

In view of the apparent problems in the 1979 general reassessment, a comparison with other properties generally may not have been any more informative to the court than the evidence presented; nevertheless, based upon the inherent problems with the values of the properties used for comparison, the court is of the opinion that the petitioners have failed to carry their burden of proof by clearly establishing that the assessed value of their property exceeds the fair market value of the property. Such a conclusion cannot be reached because the court cannot draw accurate comparisons with the subject properties and the comparative properties generally.

This court fully realizes the extent to which its conclusion may place a cloud over the legality and validity of the 1979 general reassessment which was not directly

assailed by these petitioners; however, in actuality the concerns expressed by the court and the Commissioner of Revenue may pale in the light of fully developed evidence. *See, Perkins v. Albemarle*, 214 Va. 240, rehearing 214 Va. 416 (1973). Nevertheless, while a more extensive comparison of neighborhood properties generally may have untangled the maze confronting the court in determining the fair market value of comparable properties, such could not be accomplished from the record. "[C]ourts should be reluctant, within reasonable bounds, to override the judgment of assessors lest they be converted into boards of assessment thereby arrogating to themselves the function of the duly constituted tax authorities." *Richmond, Fredericksburg and Potomac Railroad v. State Corp. Comm.*, 219 Va. 301, 313 (1978).

Accordingly, since there is insufficient evidence to establish that the method of appraisal, whatever it may have been, was uniformly applied and since neither the pleadings nor the evidence are sufficient for the court to determine that the reassessment was invalid or illegal and since the court cannot conclude that either of the petitioners' property was assessed at more than fair market value, the relief requested shall be denied.