## Richmond

MYRON DAVY v. COUNTY BOARD OF ARLINGTON COUNTY.

N. E. SUPPLY CO., INC. v. COUNTY BOARD OF ARLINGTON COUNTY.

J. A. STONE v. COUNTY BOARD OF ARLINGTON COUNTY.

J. A. STONE v. COUNTY BOARD OF ARLINGTON COUNTY.

J. A. WATSON, JR. v. COUNTY BOARD OF ARLINGTON COUNTY.

S. K. CARTER v. COUNTY BOARD OF ARLINGTON COUNTY.

December 1, 1969.

Record Nos. 6917, 6918, 6919, 6920, 6921 and 6922.

Present, All the Justices.

*Royce A. Spence* (*Gibson, Hix, Millsap & Hansbarger,* on brief), for plaintiff in error in Record Nos. 6917, 6918, 6919, 6920, 6921 and 6922.

*Jerry K. Emrich, Assistant County Attorney* (*William J. Hassan, Commonwealth's Attorney,* on brief), for defendant in error in Record Nos. 6917, 6918, 6919, 6920, 6921 and 6922.

CARRICO, J., delivered the opinion of the court.

J. A. Stone is the owner of two tracts of land and Myron Davy, N. E. Supply Co., Inc., J. A. Watson, Jr., and S. K. Carter each is the owner of an individual tract in the same block of Jefferson Davis Highway (U. S. Route 1) in Arlington County. On November 3, 1966, a separate application covering each tract was filed by the owner

thereof seeking a refund of taxes for an allegedly erroneous assessment (Code § 58-1145).

The County Board of Arlington County and Colin C. MacPherson, County Treasurer, filed answers. The six applications were consolidated for trial, and the matter was heard by the court. The applications were dismissed, and the applicants were granted writs of error.

The refunds of taxes sought were for the year 1966. On January 1 of that year, a general reassessment by the Arlington County General Reassessment Board became effective. As the result of the Board's action, the square foot valuation for tax purposes of the applicants' land was changed as follows:

| Owner | From | To |
|-------|------|----|
| Myron Davy | $2.25 | $6.00 |
| N. E. Supply Co., Inc. | 2.15 | 6.00 |
| J. A. Stone | 2.00 | 6.00 |
| J. A. Stone | 2.25 | 6.00 |
| J. A. Watson, Jr. | 2.08 | 6.00 |
| S. K. Carter | 2.25 | 6.00 |

The applicants do not claim that their parcels were appraised in excess of their market value, but rather that the valuations lacked uniformity when compared with those placed on like properties in the immediate area. They contend that they showed that their tracts were of like or similar nature to certain other parcels in the area which were valued for tax purposes at substantially less than theirs. Thus, they say, they carried their burden of proving lack of uniformity and were entitled to have the valuations placed upon their land reduced to the level of those placed on the other parcels.

The applicants' property is located a short distance south of Washington, D. C., near the Pentagon Building. The tracts occupy most of a city block bounded on the east by Jefferson Davis Highway, on the west by Eads Street, on the north by Army-Navy Drive, and on the south by 15th Street.[1] All except the Carter parcel have frontage on and access to both Jefferson Davis Highway and Eads Street. The Carter tract fronts on and has access to Jefferson Davis Highway. It does not front on but has access to Eads Street.

The parcels owned by the applicants are presently devoted to industrial and commercial uses. However, they are in an area which,

---

[1] For better understanding, a map of the area is reproduced herein.

because of its proximity to Washington, is changing to office building and apartment uses. The experts who testified agreed that the latter uses constituted the highest and best utilization of the applicants' land.

For comparison purposes, the applicants focused their attention upon three general groupings of land in the area. One of those was a parcel owned by a corporation known as 1100 Eads Street, Inc.;

another consisted of a number of tracts referred to collectively as the "Cafritz Property"; and the last was composed of a number of parcels known as the "Hengen Block."

The tract owned by 1100 Eads Street, Inc., is located in the same block as the applicants' property and lies between the parcels owned by the applicants Carter and Stone. The tract is devoted to the same general use as the applicants' property. It has frontage on and access to both Jefferson Davis Highway and Eads Street. The valuation placed on this tract was $3.00 per square foot, although the evidence showed that it was at least equal in value to the applicants' land.

The "Cafritz Property" is located to the west of the applicants' parcels and is made up of several large tracts of unimproved land. A portion of the "Cafritz Property" lies directly across Eads Street from the applicants' land and also fronts on Fern Street and Army-Navy Drive. The balance of the "Cafritz Property" lies to the west of Fern Street and also fronts on Hayes Street and Army-Navy Drive. The valuations placed upon the "Cafritz Property" were $3.00 to $4.00 per square foot, although the evidence was that its value was $6.00 to $10.00 per square foot.

The trial court found that the lower valuations placed upon the tract owned by 1100 Eads Street, Inc., and upon the "Cafritz Property" were in "error," resulting from "an oversight." The court ruled that such land was not, therefore, "a true comparable" and refused to consider the valuations placed thereon in determining whether there was lack of uniformity in the valuation of applicants' land.

Zane Mason, a member of the General Reassessment Board, testified to the procedures followed by the Board in reassessing the 3,000 or more parcels of land in Arlington County. He stated that the "county was divided up" and that members of the Board "went out in [teams] of two, sometimes three" and made appraisals. Thereafter, he said, the full Board reviewed the appraisals, lowering "a good many" and increasing "some of them."

With respect to the parcel owned by 1100 Eads Street, Inc., and the parcels making up the "Cafritz Property," Mr. Mason testified that the Board failed to review "the initial appraisal." Accordingly, he said, the final valuation placed thereon were made "without benefit" of knowledge of the increased values placed upon other land in the area, and so were not what they "should be." The failure to review, the witness stated, resulted from the "pressure of time because this was one of the last areas of the county which we did work on."

Thus, the evidence supports the trial court's finding that the valuations placed upon the land owned by 1100 Eads Street, Inc., and upon the "Cafritz Property" were in "error." The applicants cannot, therefore, rely upon the lower valuations assigned that property in attempting to show lack of uniformity in the valuation of their own land. *Roanoke* v. *Gibson*, 161 Va. 342, 349, 170 S.E. 723, 726 (1933).

This leaves the applicants only the "Hengen Block" to support their contention that their land was not uniformly valued for tax purposes. The "Hengen Block" is located across Jefferson Davis Highway from the applicants' property. The parcels in this block are in the same zoning classification, M-2, and are devoted to the same general uses as the applicants' property. While the applicants' land was valued at $6.00 per square foot, the tracts in the "Hengen Block" were valued at $2.75 to $4.00 per square foot.

The record shows, however, that there are significant differences between the property of the applicants and that in the "Hengen Block." The applicants' property has frontage on and direct access to Jefferson Davis Highway. The parcels in the "Hengen Block" front on a spur line of the Richmond, Fredericksburg and Potomac Railroad Company and have access to Jefferson Davis Highway only across the spur. The rail line is elevated two to six feet above the adjoining land.

The applicants' parcels, in addition to fronting on Jefferson Davis Highway, have access from the rear to Eads Street. The property in the "Hengen Block" backs up to the main line of the Richmond, Fredericksburg and Potomac Railroad Company.

Furthermore, the expert witnesses agreed that the tracts in the "Hengen Block," like the applicants' property, are best suited for assembly into larger parcels to be developed for office building and apartment uses. There was evidence, however, that the "Hengen Block," because of the depth of the parcels and the "intensive improvement" thereon, would be more difficult and expensive to assemble than the tracts making up the applicants' property. And there was evidence that the development of the "Hengen Block" would be delayed and rendered more expensive by the presence of the spur line separating it from Jefferson Davis Highway.

The applicants had the burden of proving that the valuations placed on their land were "out of proportion to other like surrounding property." *City of Norfolk* v. *Snyder*, 161 Va. 288, 291, 170 S.E. 721,

722 (1933). The evidence produced by the applicants related either to property which was shown to be undervalued by mistake or to property which was not shown to be of like or similar nature to theirs. Such evidence was not sufficient to discharge the burden imposed upon the applicants.

The judgments of the trial court will be affirmed.

*Affirmed.*