# 𝕾taunton

## WASHINGTON COUNTY NATIONAL BANK v. WASHINGTON COUNTY, VIRGINIA, ET AL.

September 5, 1940.

Record No. 2183.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

. The opinion states the case.

*Roby C. Thompson* and *E. W. Potts*, for the plaintiff in error.

*Fred C. Parks*, for the defendants in error.

HOLT, J., delivered the opinion of the court.

Under review is a motion to correct a tax assessment said to be erroneous and excessive.

The property taxed is a five-story bank building at the intersection of Main and Wall streets in the town of Abingdon in Abingdon magisterial district of Washington county. ■ There is a clear presumption in favor of these assessments which must be met and overborne before a petitioner can prevail. Values are matters of opinion. Estimates of competent and disinterested witnesses must vary, and so,

at the most, all that we can hope for is that rough justice be done. *City of Norfolk* v. *Holland,* 163 Va. 342, 175 S. E. 737.

■ Before relief can be given it must appear that the assessment is out of line generally with other neighborhood properties, which in character and use bear some relation to that of a petitioner. It is not enough to show that it is valued above a rate apportioned to another near-by lot. The inequality must be not only out of line but out of line generally.

The Constitution of Virginia, section 169, declares that assessments of real estate shall be at their fair market value. But this mandate has been so honored in the breach that no assessors feel called upon to apply it in practice. If this bank building be assessed at its fair market value, it would probably be the only building in Abingdon so assessed. Indeed, section 169 of the Constitution is to be read in connection with section 168, which provides that taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Under our system of taxation, local political subdivisions must rely for support upon income from tangible taxable properties within their territorial jurisdiction. Adequate provisions for the maintenance of government are necessary. The money must come and from this designated source. In the argot of the stage, the play must go on.

■■ If values are high, the rate is low; if the rate is low, values must be raised. With this in mind, any system of taxation which rests upon all citizens ratably meets the requirements of the 14th Amendment to the Federal Constitution. *Sunday Lake Iron Co.* v. *Wakefield Township,* 247 U. S. 350, 38 S. Ct. 495, 62 L. E. 1154; *Sioux City Bridge Co.* v. *Dakota County, Neb.,* 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979. If the burden be uniform upon a class of properties within the territorial limits of the authorities levying the tax, the requirements of our State Constitution are also met.

■ The burdens of government, as near as may be, must be ratably apportioned among all its citizens, although absolute equality is never obtainable.

"A municipality cannot function unless it can meet its necessary expenses, and that it can do only through taxation. If in its ratable distribution it be fair that a certain lot should pay $100.00, it makes little difference to the owner if the lot be assessed at $5,000.00 with a 2 per cent rate, or at $10,000.00 with a 1 per cent rate. In practice it has been the general custom in this state to undervalue property and to advance the rate, and so to a corresponding extent the letter of section 169 of the Constitution has not been observed; property has not been assessed at its market value, and an assessment in excess of market value would be no greater departure from its mandate provided these assessments were, as they must be in any case, ratable." *City of Roanoke* v. *Gibson*, 161 Va. 342; 170 S. E. 723.

An unavailing attempt was made to reduce the assessment for 1937. The reason for this failure was thus stated by the trial judge:

"The assessment of these properties ranged from twenty to thirty per cent of the fair market values as testified to by said witnesses. According to their opinion and testimony the fair market value of petitioner's property is $40,-000, while its assessed value is $25,000, which is to say that, according to the evidence, the petitioner's property is assessed at sixty-two and one-half per cent of its fair market value.

"My opinion, from the evidence before me, is that the assessment of petitioner's property, based on present day values, is ununiform and unequal as compared with the other properties described in the evidence, but my further opinion is that this court is powerless to do anything about it."

"Under the Constitution and law of Virginia, real estate is to be assessed at its fair market value."

\*　　\*　　\*　　\*　　\*　　\*　　\*

"It appears to me that the only remedy for a situation such as that presented in this case rests in a general reassessment and equalization of assessed values. Whether or not there shall be such general reassessment and equalization is a matter for the board of supervisors to decide, and, as already stated, in my opinion the court is powerless in this proceeding to grant to petitioner the relief prayed for."

Probably to meet such a situation the General Assembly by an act approved March 10, 1938, Acts of Assembly, 1938, ch. 97, p. 163, provided that:

"Any person assessed with county levies or other local taxes on real estate, aggrieved by any such assessment, may, if the real estate involved is located in a county where there had been no general reassessment of real estate since 1930 and no board of equalization of real estate assessment appointed since 1930, apply for relief to the circuit court of the county wherein such assessment was made.

"In such proceeding the burden of proof shall be upon the taxpayer to show that the assessment against the real estate involved is out of line with the assessment against other comparable real estate in the same magisterial district, but it shall not be necessary for the taxpayer to show that intentional systematic and wilful discrimination has been made."

Thereafter petitioner again sought relief and instituted this proceeding.

Evidence was heard in open court. The assessment for the year 1938 is:

"County Land Book 1938 page 354 line 33
Washington County National Bank, value of lot $ 2,500
Value of building                                22,500
                                        _____
                    Total                       $25,000"

The trial court was of the opinion that the fair market value was $75,000 and that the assessment should be 25 per cent of that amount, or upon $18,750, and not $25,000, as it now is.

Petitioner, in its assignment of error, said:

"The court erred in fixing the fair market value of petitioner's property at $75,000, as there is no evidence upon which to fix such a valuation, and all the evidence introduced at the hearing as to the fair market value of petitioner's property was to the effect that the fair market value of the same was from $35,000 to $40,000, and the court erred in not reducing the assessment against petitioner's property to twenty-five per cent of the fair market value, as determined by the evidence, to-wit, twenty-five per cent of $40,000."

No complaint is made of the 25 per cent fixed upon as being out of line with other assessments; it is the $75,000 market value which is charged to be excessive.

The building was put up in 1922 or 1923 at a cost somewhere between $80,000 and $90,000. The assessment for 1925 was $25,000. There has been no general reassessment of real estate since that date, and no board of equalization has been appointed since 1930.

It is well located; probably it is the best located building in the town of Abingdon. Its first story is faced with stone; those above with brick. At its top is a roof-garden, probably not often used. One witness has aptly described it as over-built and top-heavy.

If the bank be charged with rent for its room at $125 per month, the total income is $4,890.56. Cost of operation is $4,387.39, made up of these items:

| "Wages—janitor and elevator girl | $ 900.13 |
| Fuel | 393.12 |
| Insurance | 441.81 |
| Real estate taxes | 967.50 |
| Janitor supplies | 211.64 |
| Plumbing repairs | 29.23 |
| Water & lights and power | 568.96 |
| Allowance for depreciation | 875.00 |
| | $4,387.39." |

It was first occupied by the Peoples National Bank, which failed in 1927, and was then sold to the West Abingdon Realty Corporation for $70,000. That corporation was a holding company for the First National Bank of Abingdon. It, too, failed in 1933, and on February 13, 1937, petitioner purchased this property for $35,000. This was probably less than it was worth, for there is no general demand for bank building.

As we have had occasion to say, values are matters of opinion, to which no yardstick can be applied.

These general rules we recognize and apply: Courts are reluctant to override the judgment of assessors and of boards of equalization. Inequalities are inevitable; to avail they must be striking and must be made to appear by a clear preponderance of evidence. Moreover, the judgment of the trial court is entitled to great weight; but, with all of this in mind, in the final analysis we follow the evidence.

For the defendant, two witnesses were introduced— one the treasurer of Abingdon and the other its mayor. The treasurer thought that a $25,000 assessment was fair but said that from the standpoint of income, it is too great. The mayor thought "It is a little excessive." Mr. Cumbow, an experienced realtor, put its market value at $40,000 and so did Mr. Johnson, another realtor of wide experience. Mr. Brown, cashier of petitioner's bank, thought $35,000 was proper, and this was Mr. Carson's estimate, a lifelong resident of and a large property holder in Abingdon. As we have seen, it sold for $70,000 in 1927 and for $35,000 ten years later. In the light of these figures, we are forced to the conclusion that a market value of $75,000, fixed upon by the court, is excessive. Its annual income upon this basis is less than seven-tenths of one per cent. (.7 of 1 per cent). But it is easier to say what is wrong than what is right. No judgment which we might give is demonstratively right. In the light of sales prices, of income and of estimates given by witnesses conceded to be competent, $50,-000 would appear to be a reasonable compromise estimate, and this we adopt. The court itself said that a 25 per cent

assessment is generally in line with assessments given to neighborhood property. If we adopt that, and we do, then the assessment should be $12,500, and it is so ordered.

For these reasons this case is reversed and remanded.

*Reversed and remanded.*