# Richmond

SKYLINE SWANNANOA, INC. v. NELSON COUNTY.

October 13, 1947.

Record No. 3245.

Present, *Hudgins, C. J., and Gregory, Eggleston and Buchanan, JJ.

*Note.—Former Chief Justice Holt sat during the argument of this case and before his death concurred in this opinion.

The opinion states the case.

*Whitehead & Marshall*, for the plaintiff in error.

*L. Grafton Tucker*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Skyline Swannanoa, Inc., alleged, in its petition against Nelson county, that the assessment of its real estate and improvements thereon was more than the fair market value thereof; and that the assessment was not uniform in its application in that it was not in proportion to the assessed value of other real estate with improvements in the county. The prayer of the petition was that the assess-

ment be corrected and that there be a refund of the excess taxes paid to the county for the year 1944. After a full hearing, the trial court entered an order denying the prayer of the petition and dismissed the case. From that order this writ of error was awarded.

The tract of land involved was a part of a larger tract formery owned by Major James H. Dooley and known as "Swannanoa." It lies astride the Blue Ridge Mountains at Rockfish Gap just west of Afton. On this tract Major Dooley built, and occupied until his death in 1922, a large mansion house of Georgian and Italian marble. The original cost of this building is said to have exceeded a million dollars. Entrance to the estate is through a stone archway built on the southern side of Route 250 at Rockfish Gap. A macadam road extends from this archway to the mansion, a distance of one and three-tenths miles. In addition, Major Dooley constructed a commodious stone stable, later used as a garage, a small stone dwelling occupied by the caretaker and a storage room. A beautiful lawn and gardens were laid out and maintained.

After Mrs. Dooley's death in 1926, Mr. Oliver J. Sands organized Swannanoa Estates, Inc., and purchased the property for use as a country club. Various parts of the estate were subdivided into residential sites. Many were sold. The mansion house was used as a club house. Additional tracts of land were purchased and an extensive golf course was laid out. The estate was beautiful and was kept in excellent condition. The ambitious country club program was never a financial success. The company failed and its assets were sold in a chancery suit. The greater part of the land, including the golf course, was sold to different parties. Approximately 700 acres of land, including the mansion house and the other three buildings, were purchased by the Dooley heirs at a commissioner's sale for $179,700. The Dooley heirs sold their interest to the Swannanoa Development Corporation, which paid $50,000 in cash and mortgaged the property for the unpaid balance of $125,000. This company failed and the real estate was returned delin-

quent for the non-payment of taxes for the years 1936 to 1941, inclusive. These taxes, amounting to $6,315.42, were paid in 1943 by the mortgagees. These mortgagees organized a new company known as the Valley Corporation, to whom the property was sold at public auction on May 20, 1944, for $75,000. In October of the same year the identical property, described as containing 629.14 acres, was sold by the Valley Corporation to the petitioner for $60,100.

546.54 acres of this land lie in Augusta county. This acreage was assessed at $2,900 and the improvements thereon at $2,400, making a total of $5,300. No relief is sought as to this assessment. The remaining acreage, 163.10 acres, lies in Nelson county and is assessed at $10 an acre, or $1,630, and the buildings and improvements thereon are assessed at $75,000, making a total of $76,630. The total assessment for the one tract in the two counties is $81,930, or $21,830 more than the petitioner paid for it. The petitioner raises no objection to the valuation placed upon the land itself. Its attack is concentrated upon the valuation placed upon the improvements in Nelson county.

Sections 168 and 169 of the Constitution of Virginia provide that all real estate and tangible personal property shall be assessed at its fair market value and that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the taxes. The two sections must be construed together. The dominant purpose of these provisions is to distribute the burden of taxation, so far as is practical, evenly and equitably. If it is impractical or impossible to enforce both the standard of true value and the standard of uniformity and equality, the latter provision is to be preferred as the just and ultimate end to be attained. *Norfolk* v. *Snyder,* 161 Va. 288, 170 S. E. 721; *Lehigh Portland Cement Co.* v. *Commonwealth,* 146 Va. 146, 135 S. E. 669; *Sioux City Bridge Co.* v. *Dakota County,* 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979.

These two basic principles are set forth in section 414

of the Tax Code, which provides that, in a proceeding before the court for the correction of an erroneous assessment, the burden of proof shall be upon the taxpayer "to show the property in question is assessed at more than its fair market value, or, that said assessment is not uniform in its application. * * * .

"For the purpose of reducing or increasing the assessment and adjusting the taxes * * * , the court shall be clothed with all the powers and duties of the authority who, or which, made the assessment complained of, as of the time when such assessment was made, and all powers and duties conferred by law upon such authority between the time such assessment was made and the time such application is heard."

The record discloses that the uniform assessment of real estate in Nelson county is thirty-five to forty per cent of its "fair market value." This being true, it was the duty of the board of assessors to use the same yardstick in determining the assessed value of petitioner's tract of land and the improvements thereon.

The members of the board frankly admitted that they did not apply this formula in determining the value of the improvements on the land in question. One member of the board stated that there were three tracts of land in Nelson county which they placed in one class: namely, Elk Mountain, Oak Ridge and the Swannanoa property. He said: "They were in classes by themselves, and I don't think you would expect us to know what the values of them were. We don't know what the market value was, what they are used for, or what they cost. We do know what it cost to build a five or ten thousand dollar home, or a barn, but when it comes to building a million dollar home that is a different story. We just tried to equalize those as something alike as we saw them, and I believe to leave them as we found them was about as good as we could do.

"Q. Do you know of any reason why that assessment should be changed now?

"A. No, I don't know of any reason. It is a mint of money laying up on that mountain in the form of marble. What it can be used for is something to answer."

This and other witnesses for the county stated that if the assessment at $75,000 was based on the cost of construction, it was too low; if based on the market value, "you are outlawed because there is evidence it has been sold for less than that."

Prior to 1942, the year this property was reassessed, the land on Oak Ridge tract was assessed at $110,530, which the 1942 board reduced to $68,740. The reason given for this $41,790 reduction in the assessment was that, when this property was assessed in 1935, this farm was in a high state of cultivation and had a high productive value, and in 1942 these fields had grown up in bushes "for deer to run around in."

The Oak Ridge estate and the Elk Mountain estate are owned by millionaires and used for residential purposes. The buildings and other improvements were constructed and have always been maintained by men of wealth who spent large sums upon the improvements and continued to spend the necessary sums for upkeep and maintenance. While these two estates were not developed primarily for profit, the board gave due consideration to the fact that the agricultural development of Oak Ridge had been abandoned and that the productivity of the fields had decreased, and for that reason made a substantial reduction in the assessed value.

We have cited the evidence dealing with the Oak Ridge and Elk Mountain estates not because the condition of these two estates is pertinent to the issue but because Nelson county contends that the three estates are in a class to themselves and that the same yardstick was used in ascertaining the assessed value of the three tracts. The assessing board was not consistent in its treatment of the three tracts of land because, when it appeared to them that the productive value of that part of Oak Ridge devoted to agricultural purposes had been greatly diminished since

the prior assessment, the board reduced its assessed value by $41,790, but it made no change in the assessment of the Swannanoa property.

While the income from real estate used as a residence by the owner is not the dominant element to be considered in determining the fair market value, it is an element to be given weight along with other circumstances which tend to increase or diminish the value of the property. Farming land which is maintained in a high state of cultivation is worth more than the same or similar land which has been abandoned and allowed to grow up in bushes and weeds.

The record discloses that the board of assessors, without attempting to ascertain the market value of Swannanoa, simply placed the same valuation on it in 1942 that a former board had placed on it in 1930. The evidence is that there had been a marked change in the condition of Swannanoa within the 12-year period. In 1930 the property was occupied and used as a country club, kept in a good state of repair and the grounds and golf course adequately maintained. In 1942 the dwellings, except for a caretaker, had been vacant for a number of years. Vandals had removed and broken many pieces of marble, some weighing as much as 300 pounds. The porch rails had fallen down and the porches themselves were in a very dilapidated condition. The macadam road leading to the mansion house was full of ruts; limbs of trees which had grown on each side of the road from the archway to the mansion house would scratch a passing car on both sides. The yard and gardens were full of bushes and weeds. For many years no attempt had been made to preserve the pristine beauty of this property.

The main dwelling was designed for use as a private residence. There seems to be no market for the property for such use. Attempts have been made to convert the building to commercial use, but its architectural design has proved too much of a barrier to make such ventures financially successful. If the dwelling were razed, the sal-

vage value of the material would not greatly exceed the cost of demolition.

Major John S. Graves, president of petitioner corporation, stated that the purchase of this tract of land was induced by the desire of the company to convert the estate into a motor court at the junction of Route 250 with the Skyline Drive. After petitioner had agreed to purchase, it was ascertained that the State Highway Commission, in acquiring 80.5 acres of the original tract for the Blue Ridge Parkway, had restricted the right of the owner of the remaining tract to enter either the Skyline Drive or Route 250 except at designated points not exceeding 30 feet in width. These restrictions tend to decrease the value of the tract, as an entrance to, and an outet from, the motor court would have to be through the same passageway. This would create a bottleneck through which it would be more difficult to induce travelers to pass.

Swannanoa has produced no income since 1935. As heretofore stated, there have been three public and one private sales of the property, each sale showing a substantial loss to the owners. The amount of the depreciation reflected in these sales is $119,400. This marked depreciation in value is quite a contrast to the steady advance which has been noted in other residential and business properties.

Mr. Justice Gregory, in *Norfolk* v. *Snyder, supra,* at page 291, restated a formula which is a helpful guide in determining values: "This court has held that the fair market vaue of property is the price it will bring when offered for sale by one who desires but is not obliged to sell, and is bought by one who is under no necessity of having it."

We have said frequently that values are matters of opinion, to which no rule of thumb can be applied. Before the valuation fixed by a board of assessors can be lowered by the court, the taxpayer must carry the burden of proving that the property in question is assessed at more than its fair market value, or that said assessment is not

uniform in application within the authority of the taxing unit.

Mr. Justice Holt (now Chief Justice), in *Washington County Nat. Bank* v. *Washington County*, 176 Va. 216, at page 222, 10 S. E. (2d) 515, after restating the general rules, said: "These general rules we recognize and apply: Courts are reluctant to override the judgment of assessors and of boards of equalization. Inequalities are inevitable; to avail they must be striking and must be made to appear by a clear preponderance of evidence. Moreover, the judgment of the trial court is entitled to great weight; but, with all of this in mind, in the final analysis we follow the evidence."

The evidence in this case clearly reveals that due consideration was not given to the fact that the property had shown a steady decline in value over a period of years, that its use had been changed from residential to commercial, that it had been unoccupied for many years, during which time it had not produced any income.

Members of a judicial or a quasi-judicial body should not, and do not, decide issues on personal knowledge, but upon the evidence produced before them. The only reasonable conclusion that can be drawn from the evidence in this case is that the assessed value of the improvements on the tract of land in question is excessive. The evidence available to the board of assessors at the time it fixed the valuation establishes this fact. However, section 414 of the Tax Code clothes the court with "all powers and duties conferred by law upon such authority between the time such assessment was made and the time such application (for correction of erroneous assessment) is heard." During this interval the property was sold at public auction for $75,000 and later at a private sale to petitioner for $60,100.

The only testimony tending to show the fair market value of the property is the testimony of the officers of the plaintiff corporation who insist that the petitioner paid the full market value for it. However, petitioner, in its brief, suggests that the court fix the assessed value of the

whole tract of land at the average sum of the three sales ($179,700; $75,000; and $60,100), which is $104,933, and apply the forty per cent ratio, which the evidence establishes to be. the ratio between the assesesd value and the fair market value generally applied to real estate in Nelson county. This would make the assessed value of the whole tract $41,973, from which should be deducted $5,300, the assessed value of the tract and improvements in Augusta county, making the assessment of the land and improvements in Nelson county $36,673.

We adopt this suggestion and fix the assessed value of the land and improvements in Nelson county at the sum stated, but, in so doing, we do not intend to make the average sales price formula a binding precedent to be applied to every case involving the question of the assessed value of property.

This conclusion entitles petitioner to recover the excess taxes paid on the property for the year 1944 and subsequent years, if any such excess payments were made. We reverse the judgment of the trial court and remand the case for the proper adjustment of the tax account between Nelson county and petitioner to be made in accordance with the views herein expressed.

*Reversed and remanded.*