# Richmond

TUCKAHOE WOMAN'S CLUB v. CITY OF RICHMOND, ET AL., ETC.

January 20, 1958.

Record No. 4755.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*E. Ballard Baker* (*Wicker, Baker & Goddin,* on brief), for the plaintiff in error.

*J. E. Drinard, City Attorney* (*John P. McGuire, Jr., Assistant City Attorney,* on brief), for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The City of Richmond assessed the appellant's real estate for 1955 at the sum of $105,000, being $5,000 for the land and $100,000 for the improvements. The appellant filed in the court below its application for a reduction of the assessment, alleging that the fair market value of the property was not more than $85,000 and asking for a refund of the tax paid by it in excess of the amount due on a proper assessment. The court heard evidence *ore tenus* and being of opinion that the assessment was not erroneous entered an order denying relief and dismissing the application. The issue on appeal is whether the assessment represents the fair market value of the property.

The lot, which is located at the corner of Dover Road and Avon Road in Windsor Farms, Richmond, was conveyed to the appellant, Tuckahoe Woman's Club, a nonstock corporation, in 1947, subject to a restrictive covenant which expires in 1977 under which the property can be used only as a woman's club. The clubhouse was built thereon in 1954 of brick with a slate roof and consisting in the main of a large auditorium with small balcony, stage, reception hall and small caterer's kitchen.

To establish the fair market value of the property the appellant offered the testimony of three experienced real estate men and the contractor who constructed the building. One was Frank W. Heindl, who had been appraising property for the last twenty years, including property in Windsor Farms, for the City of Richmond, Federal and State governments, banks, insurance companies and other corporations and individuals. He had inspected this property in 1955 for the purpose of determining its fair market value. He was then informed that the building cost $124,500 and the land $10,000. He testified that it was adapted primarily for its use as a club building, not easy to sell and in his judgment it would bring not more than

$75,000 to $80,000 or $85,000 at a free sale. On cross-examination he said that if the City should want to acquire it by condemnation it should not pay more than $75,000 to $85,000 for it; that it was not worth more than that sum for any purpose.

George B. Snead, in the real estate business for twenty-seven years, was experienced in appraising and familiar with values in Windsor Farms. He inspected the property in 1955 for the purpose of arriving at its fair market value. He said that property built for a special use such as this when put on the market invariably had to be sold for less than reproduction cost or what it would appear to be worth, and if this property became for sale the owners would do well to get from $75,000 to $85,000 for it. On cross-examination he testified that if there were another club ready, able and willing to buy it for the same purpose, the appellant would be fortunate to get $75,000 to $85,000 for it, and if he were on a condemnation commission that would be his valuation of it.

J. Guthrie Smith, who had been a real estate broker in Richmond for thirty-six years, engaged in all phases of real estate business, was the president and sales manager of Windsor Farms, the appellant's grantor, from 1934 to 1954, and made the sale to the appellant. Testifying as to the value of this property for sale purposes, he said his experience in appraising had led him to believe there was no fair market value for clubs or lodges or churches or things of that nature; that they do not enjoy a market like other types of property, and when asked for the fair market value of them "you more or less pull it out of the air"; that his idea of a fair selling price for this property would be $75,000, based on his thirty-six years of experience in dealing with all types of real estate. "It is just one of those things that is a matter of judgment." On cross-examination he said he did not consider the value of the property to the Tuckahoe Woman's Club itself because use value was "another one of those things you pull out of the air." He illustrated that view by saying "A guy's false teeth might be worth a lot to him but they wouldn't mean anything to me."

J. Leonard Moore, the contractor on the building, said the cost of construction was in the neighborhood of $112,000. He was reasonably familiar, he said, with the fair market value of property in Richmond and had done some appraising but not on a paid basis. Based on his experience he did not think the building would possibly sell for more than $75,000.

The only witness for the City was J. Edward Rountrey, its assessor of real estate who made this assessment. He had held that position since 1954 and had twelve years of experience in appraising property. He described the building and introduced photographs of it. He explained the basis of his assessment of $105,000, saying in substance that it would cost some $125,000 to reproduce the building plus the cost of the land, from which amount he made certain deductions because a building serving the same purpose and equally efficient would not cost more than $100,000. He said his purpose was to equalize the tax burden which he believed was the intent of the law in stating that property shall be assessed at its fair market value; that there are many properties for which there is no market value except to their owners; that the principle involved here assumes that the only market for the property is the present owner. "If these people abandoned it, our approach to the assessment would be entirely different. But so long as they use it we try to arrive at use to the present owners just like anything of a very special purpose nature." He said the property could never be rented for any purpose "and I cannot conceive of it ever being sold in our lifetime because there is no other club that would want it so our only guide which is acceptable is a depreciated reproduction cost. I have depreciated it as far as I can justify and that is the way we have arrived at $105,000.00. That is the way we have arrived at the valuation of all special purpose properties located in the city."

On cross-examination he was asked: "You say you base this appraisal on the depreciated reproduction cost?" He answered, "Right." He was asked whether he included any element of value to the present owner and he replied, "The value to the present owner is the only value I have to go by. It has no market value elsewhere that could be compared or justified."

Section 169 of our Virginia Constitution provides that "all assessments of real estate and tangible personal property shall be at their fair market value." In *Seaboard Air Line* v. *Chamblin*, 108 Va. 42, 60 S. E. 727, this court adopted the definition given by Lewis on Eminent Domain (2d ed., p. 478) that the fair market value of property "is the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it." That definition has been repeated without change in many subsequent cases, a recent one be-

ing *Skyline Swannanoa* v. *Nelson County*, 186 Va. 878, 885, 44 S. E. 2d 437, 441.

In estimating that value, as said in the first-named case, all the capabilities of the property and all the uses to which it may be applied or for which it is adapted, are to be considered, but it is not a question of the value of the property to the owner.

██ In *Lehigh, etc., Co.* v. *Commonwealth*, 146 Va. 146, 135 S. E. 669, it was said that in most cases an assessment based on the original value of the property less depreciation would afford an equitable basis of taxation, but would ignore the plain provisions of § 169 of the Constitution that all assessments shall be at their fair market value, and whatever the rule may be in other jurisdictions the rule laid down in § 169 is "the only legal rule provided by law for the assessment of real estate and tangible personal property situated in this Commonwealth." 146 Va. at 151, 135 S. E. at 670-1.

In that case the assessment was reduced on proof that lands in the district where the company's plants were located were uniformly assessed at only 50% of the actual value. The reduction was on the ground that § 169 of the Constitution must be read in connection with § 168, which requires that taxes be uniform on the same class of subjects within the territory of the taxing authority, and where it is impossible to secure both the standard of the true value and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law. That principle was reiterated in *Skyline Swannanoa* v. *Nelson County*, *supra*, 186 Va. at 881, 44 S. E. 2d at 439. But that does not mean that property in any taxing jurisdiction may be assessed in excess of and without relation to its fair market value as required by the Constitution. It means only that a taxpayer whose property is assessed at its true market value has a right to have the assessment reduced to the percentage of that value at which others are taxed so as to meet the uniformity required by § 168 of the Virginia Constitution as well as by the Equal Protection Clause of the Fourteenth Amendment. *Lehigh, etc., Co.* v. *Commonwealth, supra.*

The problems of assessing officers in ascertaining the fair market value of property are often difficult, particularly so when the property to be assessed is of a kind not usually involved in sales and having no general market value. Problems of that kind were presented in *Washington County Nat'l Bank* v. *Washington County*, 176 Va. 216, 10 S. E. 2d 515, and in *Skyline Swannanoa* v. *Nelson County*,

*supra.* In the former a bank building was involved which the petitioner had purchased for $35,000, which the court noted was probably less than its worth because there was no general demand for a bank building. The trial court fixed the market value at $75,000 which this court reduced to $50,000 as being more nearly in accord with the evidence. The original cost of the building involved in the *Skyline Swannanoa* case was more than a million dollars. The assessing board had made no effort to ascertain the fair market value but in 1942 assessed it at the same value as a former board had placed on it in 1930. The only testimony as to fair market value was given by the petitioner's officers, but this court adopted petitioner's suggestion and fixed the assessment at the average of three sales, with the admonition that the method was not to be considered a binding precedent.

In the case at hand there is no real conflict in the evidence as to fair market value, which is the controlling standard for the assessment. The appellant's witnesses, qualified and experienced, placed the fair market value of appellant's property at $75,000 to $85,000. The City's assessor, and only witness, stated in a letter to plaintiff's counsel in October, 1955, that he agreed that if the property was then offered on the market it would not bring more than $75,000 to $85,000, but that he believed it had a value in use to the present owners somewhat in excess of $100,000, and he did not believe it would be fair to other property owners to assess it for any less. He stated on his cross-examination that if the owners desired to sell it he could not conceive of its bringing more than $85,000.

Section 58-1145 of the Code provides that on an application of this sort the burden of proof is on the taxpayer to show that the property in question is assessed at more than its fair market value or that the assessment is not uniform in its application. In *Washington County Nat'l Bank* v. *Washington County, supra,* we said that courts are reluctant to override the judgments of assessors and that the judgment of the trial court is entitled to great weight, "but, with all of this in mind, in the final analysis we follow the evidence." 176 Va. at 222, 10 S. E. 2d at 518.

In *City of Norfolk* v. *Snyder,* 161 Va. 288, 293, 170 S. E. 721, 723, we said that the conclusion of the assessor would not be disturbed "unless it appears that there has been a manifest error in the manner of making the estimate, or that evidence which should be

controlling has been disregarded." Here the city assessor very frankly stated that his assessment of $105,000 was based on depreciated reproduction cost as representing the value of the property to the present owner, which he said was the only value he had to go by. That is not the basis for assessment fixed by the Constitution. Depreciated reproduction cost may be an element for consideration in ascertaining fair market value, but it cannot of itself be the standard for assessment. The assessor conceded that here it produced an amount in excess of what the property could be sold for. The value of the property to the owner is not the question and the answer to it does not supply the answer to the essential inquiry as to what is the fair market value. *Seaboard Air Line* v. *Chamblin, supra; Fonticello, etc., Co.* v. *Richmond*, 147 Va. 355, 137 S. E. 458; *State ex rel., etc.* v. *Weiher*, 177 Wis. 445, 188 N. W. 598.

For the reasons stated we hold that the 1955 assessment of the appellant's property was excessive and erroneous; that such assessment should have been in the sum of $85,000, and that the court below should have reduced the assessment to that amount and ordered a refund of any excess tax paid in consequence thereof. Code § 58-1148. The order appealed from is therefore reversed and the case is remanded for entry of an order granting that relief.

*Reversed and remanded.*