## Richmond

### R. CROSS, INC. v. CITY OF NEWPORT NEWS.

September 2, 1976.

Record No. 751002.

Present, All the Justices.

*C. Vernon Spratley, Jr.; Waller H. Horsley (Elmo L. Stephenson; William L. S. Rowe, Saunders, Carleton, Morrison, Stephenson & Spratley; Hunton, Williams, Gay & Gibson, on brief), for appellant.*

Robert M. Roylance, Assistant City Attorney (*Avery A. Thomas, City Attorney*, on brief), for appellee.

*Amicus Curiae: Commonwealth of Virginia (Andrew P. Miller, Attorney General; J. Durwood Felton, III, Assistant Attorney General*, on brief), for appellee.

Per Curiam.

This is an appeal from an order entered May 19, 1975, dismissing a petition for relief from erroneous assessment filed pursuant to Code § 58-1145 (Cum. Supp. 1976) by R. Cross, Inc. (taxpayer), against City of Newport News (the city). The Commonwealth appeared as *amicus curiae* in support of the city.

Taxpayer, engaged in a car rental business, complained that "the City assesses [its] automobiles on a different basis and at a higher effective tax rate than it assesses other tangible personal property". The different methods of assessment[1] employed by the city were stipulated and are summarized in the margin.[2] More specifically, taxpayer's position is that Code § 58-829 (Cum. Supp. 1976),[3] which the city

---

[1] The word "assessment" takes on different meanings in different contexts. As used in this opinion, it means the value placed upon a particular item for tax purposes. It does not mean the rate of taxation or the application of the rate to the assessment to determine the tax due.

[2] Automobiles were assessed at loan value (approximately 70% of retail value) as shown in the National Automobile Dealer's Association Used Car Guide, Eastern Edition.

Assessments for motorcycles, boats, aircraft, and recreational vehicles were drawn from similar industry "guides".

Trucks were not included in the "guides". For trucks under 10,000 pounds gross weight, a two-step assessment procedure was employed. Using data supplied by area dealers, the assessor first determined the average new retail cost and then applied a percentage, starting at 70% for the first year and declining by ten percentage points each year. For trucks and trailers over 10,000 pounds gross weight, a similar formula was applied, except that cost of acquisition was substituted for the average new retail cost.

Smaller trailers and livestock were assessed at constant values fixed in the schedules.

All other tangible personal property was assessed at 33 1/3% of the cost of acquisition.

[3] Insofar as pertinent here, this statute reads as follows:

"§ 58-829. **Classification of tangible personal property.**—Tangible personal property having been segregated by law for local taxation only, the classification hereunder, except as otherwise provided by law, shall be as follows:

. . .

"(5) The aggregate number and value of all automobiles, motor trucks, motorcycles and all other motor vehicles. . . . [continued on next page]

says "placed the different types of tangible personal property into different classifications" for tax purposes, did not establish separate classifications but merely defined tangible personal property by listing examples; that taxpayer's property is one of those examples; that the mode of assessment applied to taxpayer's property was different from those applied to other types of tangible personalty; and that such difference resulted in different effective tax rates in violation of the constitutional requirement of uniformity.

The trial court ruled that the statute "establishes separate classifications of tangible personal property for purposes of taxation and that the mode of assessment of the Petitioner's tangible personal property was neither illegal nor erroneous."

The dispositive question is whether the statute is definitional or classific.

Under taxpayer's view of legislative history, "the first direct ancestor of § 58-829 was Schedule B in the 1865-66 Acts, ch. 1, pp. 1, 18-19"; the purpose of schedule B was to provide "a checklist for the auditor"; its language "has been carried forward almost unchanged to today"; and Code § 58-829 is "nothing more than an inventory or grouping of taxable subjects within a single class." The Attorney General contradicts taxpayer's view and, in his view of legislative history, "[p]resent 58-829 exists for the sole purpose of exercising the privilege of classification conferred by the 1902 Constitution and its successors."

■■ We need not choose between these conflicting views. It is unnecessary to consider legislative history "where there can be no doubt of the meaning of the words used." *Helvering* v. *City Bank Farmers Trust Co.*, 296 U.S. 85, 89 (1935); *accord, United States* v. *Oregon*, 366 U.S. 643, 648 (1961); *cf. Train* v. *Colo. Pub. Int. Research Group*, 96 S. Ct. 1938 (1976). Here, the first sentence distinctly declares that "the classification hereunder . . . shall be as follows". In common parlance, the word "classification" may sometimes be synonymous with the word "definition". But when used in a tax statute, it is a word of art with special import, connoting a division into separate classes. The General Assembly could have chosen the word "definition" or some equivalent language. It did not; it chose the word "classification". We conclude that it did so advisedly and purposefully.

---

. . .

"(15) The aggregate value of all other tangible personal property not herein specifically enumerated. . . ."

To adopt taxpayer's construction, we would have to ignore the structure and thrust of Code § 58-829. "Classification" is the introductory predicate for the several paragraphs numbered serially. An enumeration of separate items is more characteristic of the technique of classification than of the process of definition. Moreover, if definition were the legislative purpose, then the language of the fifteenth paragraph, *i.e.*, "all other tangible personal property not herein specifically enumerated", would render the definition circuitous and abortive. Surely, the General Assembly did not intend to say that tangible personal property is defined as tangible personal property.

Testimony at trial showed that the State Tax Commissioner and commissioners of the revenue have consistently construed and administered Code § 58-829 as a classification statute.

"The elementary rule of statutory interpretation is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court. The legislature is presumed to be cognizant of such construction. When it has long continued without change the legislature will be presumed to have acquiesced therein. [Citations omitted]." *Commonwealth* v. *Radiator Corp.*, 202 Va. 13, 19, 116 S.E.2d 44, 48 (1960).

We recognize, as taxpayer argues, that the legislature has separated several items of personal property from Code § 58-829 (*see, e.g.*, Code §§ 58-829.1, -829.1:1, -829.2, -829.3, -831, -851). It clearly appears, however, that the legislative purpose in doing so was, not to repeal by implication the classification structure previously enacted in Code § 58-829, but to authorize what was otherwise forbidden, *viz.*, either a lower *rate* of taxation or an *exemption* from taxation for certain of those classes. In the construction of legislative acts, courts do not favor repeal by implication. *City of Richmond* v. *Drewry-Hughes Co.*, 122 Va. 178, 194 (rehearing), 90 S.E. 635 (1916), 94 S.E. 989, 993 (1918).

Taxpayer cites certain opinions of the Attorney General[4] which, taxpayer feels, support the view that the statute is merely definitional. But in his brief *amicus curiae* the Attorney General expressly asserts "that § 58-829 is a classification of tangible personal property under Article X, Section 1, of the Constitution of Virginia, [and] . . . [p]rior opinions of the Attorney General do not support [taxpayer's] con-

---

[4] 1964-65 Opinions of the Attorney General 344; 1965-66 Opinions of the Attorney General 279, 281, 288.

tentions." Having considered these prior opinions and the facts underlying the issues they address, we agree that they are inapposite and hold that Code § 58-829 is a statute of classification rather than definition.

We turn now to the question of uniformity.

"All taxes . . . shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. . . ." Va. Const., Art. X, § 1.

The Constitution does not require uniformity among separate tax classes. Hence, we do not consider taxpayer's argument that the tax treatment accorded property in the class created by Code § 58-829(5) was different from that accorded property in a separate class. Rather we address the question whether the tax treatment accorded the several members of the class of which taxpayer's property is a member satisfies the constitutional mandate of uniformity.

Tax liability is the product of the tax rate and the taxable value. The parties agree that the rates applied are uniform.

With respect to taxable value, Va. Const., Art. X, § 2 provides that "[a]ll assessments . . . shall be at their fair market value, to be ascertained as prescribed by law." Under Code § 58-864 (Repl. Vol. 1974), "[e]ach commissioner of the revenue shall ascertain and assess, at fair market value, all the personal property not exempt from taxation and all subjects of taxation in his county or city. . . ." The question, then, is whether the different methods used by the commissioner in the case at bar in determining the taxable values of the several members of the class of which taxpayer's property is a member satisfied the uniformity requirement.[5]

Nothing in Code § 58-864 prescribes the procedure to be followed by commissioners of the revenue in determining taxable values or prohibits the use of multiple methods. And there is no constitutional requirement that such methods be identical.

"The Constitution does not prescribe that the valuation of all property for taxation shall be ascertained in the same way or manner. It is not even implied. In the nature of things, it could not be

[5] In our consideration of this question, we again reject the argument that the fair market value provision forbids an assessment at a percentage of fair market value. *See, e.g., Woman's Club v. City of Richmond,* 199 Va. 734, 101 S.E.2d 571 (1958); *Washington Bank v. Washington Co.,* 176 Va. 216, 10 S.E.2d 515 (1940); *Lehigh, Etc., Co. v. Commonwealth,* 146 Va. 146, 135 S.E. 669 (1926). We are not persuaded by taxpayer's contention that the defeat of the proposal to eliminate that provision from the 1971 Constitution dictates a change in our rulings.

done. The many kinds or species of property with their diverse characteristics render it impossible. . . . The requirement of equality and uniformity is satisfied by such regulations as will secure an equal rate and a just valuation, without reference to the method of valuation. . . . The legislature may prescribe any method it may deem best for attaining a just and fair valuation of any species of property, and the court could not declare any such law void, unless it manifestly violated the principles required by the Constitution." *Iverson Brown's Case*, 91 Va. 762, 767, 21 S.E. 357, 358-59 (1895).[6]

The "principles required by the Constitution" are the fair market value and uniformity clauses of the first two sections of Article X.

"The two sections must be construed together. The dominant purpose of these provisions is to distribute the burden of taxation, so far as is practical, evenly and equitably. If it is impractical or impossible to enforce both the standard of true value and the standard of uniformity and equality, the latter provision is to be preferred as the just and ultimate end to be attained. [Citations omitted]." *Skyline Swannanoa v. Nelson County*, 186 Va. 878, 881, 44 S.E.2d 437, 439 (1947); *quoted with approval, Smith* v. *City of Covington*, 205 Va. 104, 108, 135 S.E.2d 220, 222-23 (1964).

■ An assessment enjoys a presumption of correctness, and the burden is on the taxpayer "to show . . . that the assessment is not uniform in its application". Code § 58-1145.

"The effect of this presumption is that even if the assessor is unable to come forward with evidence to prove the correctness of the assessment this does not impeach it since the taxpayer has the burden of proving the assessment erroneous. *Shaia* v. *City of Richmond*, 207 Va. 885, 893 (fn. 7); 153 S.E.2d 257, 263 (1967)." *N. and W. Ry. Co.* v. *Commonwealth*, 211 Va. 692, 695, 179 S.E.2d 623, 626 (1971); *accord, Fruit Growers* v. *Alexandria*, 216 Va. 602, 610, 221 S.E.2d 157, 162 (1976).

We hold that taxpayer failed to show that the different methods used by the City in determining the taxable values of the several members of the tax class created by Code § 58-829(5) violated the requirement of uniformity, and the judgment is

*Affirmed.*

[6] *See also Perkins* v. *Albemarle*, 214 Va. 416, 418-19, 200 S.E.2d 566, 568-69 (1973), where, upon rehearing, we held that different "tools of the appraisal-assessment trade" are constitutionally permissible "[s]o long as the application of such tools promotes the uniformity the Constitution commands".