## LAKE MONTICELLO SERVICE COMPANY

### V.

## BOARD OF SUPERVISORS OF FLUVANNA COUNTY AND STATE CORPORATION COMMISSION

Record No. 880934

March 3, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas, and Whiting, JJ., and Harrison, Retired Justice.

*Francis L. Buck (Buck & Hogshire*, on brief), for appellant.

*Frederick W. Payne; Wayne N. Smith (Lewis S. Minter; Anthony Gambardella*; on briefs), for appellees.

WHITING, J., delivered the opinion of the Court.

In this appeal of right from a decision of the State Corporation Commission (the Commission), we deal with a water and sewer utility company's challenge to the Commission's tax assessments. To decide the issue, we must resolve a conflict between the Commission's evaluation method of cost-less-depreciation, producing values in excess of $6,900,000, and the evidence of market value produced by the taxpayer, Lake Monticello Service Company (the service company), showing that most of its properties have no value.[1]

The development of Lake Monticello began a number of years ago. As a condition of approval of the subdivision, Fluvanna County required the developer to provide central water and sewer systems. The developer installed 60 miles of each system's lines, and included those costs in the prices of the lots that were sold.

In 1975, the service company was formed as a subsidiary of the developer, and was granted a Certificate of Convenience and Necessity by the Commission. The water distribution and sewer collection lines were given to the service company. The sewer treatment facilities, wells, and water tanks were sold to the service company. The expansion of the water and sewer treatment facilities was paid for out of the connection fees paid by the lot owners.

In 1981, the service company applied to the Commission, the assessing authority, pursuant to Code §§ 58.1-2604 and -2633, to reduce the 1978 to 1981 tax assessments of its real and personal property to what it contended were their fair market values. In that proceeding, the service company claimed the Commission's assessment method of cost-less-depreciation was unconstitutional and also introduced evidence of what it alleged were sales of comparable properties in other states. The Commission held the method was constitutional, and rejected the evidence of comparable sales as irrelevant and incompetent. Lacking evidence of mar-

---

[1] The service company concedes the adaptability of certain of its removable equipment to other uses, and, therefore, that that equipment had a market value. The service company agrees that the market values were correctly reflected in the assessments of $43,045 for 1984, $43,309 for 1985, and $39,836 for 1986.

ket data, the Commission then employed its cost-less-depreciation method to sustain the assessment. We dismissed the service company's appeal of that ruling on procedural grounds.

In 1984, the service company again applied to the Commission for similar relief from its 1984 assessment. The Commission denied relief on the grounds of collateral estoppel because it had previously considered, and rejected, the same arguments in the 1981 case. We affirmed the Commission in its holding that the service company was collaterally estopped to attack the constitutionality of the Commission's assessment method. *Lake Monticello Service Co. v. Board of Sup.*, 233 Va. 111, 114-15, 353 S.E.2d 767, 769-70 (1987). We said, however, that competent market data was the best method of determining fair market value, if such evidence was available, and that the doctrine of collateral estoppel did not apply to the service company's effort to introduce what it said was new evidence of market transactions relevant to proof of the 1984 fair market value of its property. *Id.* at 115-16, 353 S.E.2d at 770. Therefore, we reversed that portion of the Commission's holding which denied an evidentiary hearing for that purpose.

In June 1985, the Lake Monticello Homeowners Association acquired all the assets of the service company through a purchase of all of its stock. It paid nothing for the stock. There is no claim that this was not an arm's-length transaction.

While the appeal to this Court was pending, the service company filed similar claims for relief from the 1985 and 1986 assessments. Upon remand, the Commission consolidated the claims for the years 1984, 1985, and 1986, and referred the matter to one of its hearing examiners. At the examiner's hearing, the service company introduced evidence of the sale of the company in June 1985, and of the sales prices and circumstances of what expert witnesses said were comparable sales of three water and sewer companies in Virginia during the period from February 1983 to November 1985. The service company claimed that this evidence established the fair market value of most of its property.

The hearing examiner agreed, and found that the service company's evidence established a lower value than that assessed by the Commission. The Commission, however, held that because the sales relied upon by the hearing examiner were not sales to " 'willing purchaser[s]' . . . willing to pay a price approaching the original investment cost" they could not be considered as comparable

sales. Therefore, the Commission adopted its staff's assessments of more than $6,900,000 for the three-year period in question. Those assessments were based on a computation of fair market value: (1) by taking the original cost of the improvements and personal property and applying a percentage condition factor to that cost; and (2) by comparing the value of comparable locally appraised real estate.

Familiar principles govern our decision. The burden is on the service company to show that the Commission's assessment is erroneous. *Winchester & West. RR. v. State Corp. Comm'n*, 236 Va. 473, 476, 374 S.E.2d 66, 68 (1988). We will not reverse the findings of the Commission unless they are based on inherently incredible evidence, are unsupported by the evidence, *id.* at 476, 374 S.E.2d at 68, or are based on a mistake of law, *First Virginia Bank* v. *Commonwealth*, 213 Va. 349, 351, 193 S.E.2d 4, 5 (1972). The Constitution of Virginia, art. X, § 2, and Code §§ 58.1-2626 and -2633 require that all property of a public service corporation, such as the service company, be assessed at fair market value. We have said that "[f]air market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." *Clarke Associates* v. *County of Arlington*, 235 Va. 624, 626, 369 S.E.2d 414, 415 (1988) (quoting *Arlington County Board* v. *Ginsberg*, 228 Va. 633, 640, 325 S.E.2d 348, 352 (1985)).

We must decide whether the Commission properly rejected the evidence of allegedly comparable sales because the purchasers were not willing to pay a price "approaching the original investment cost." As we said in the earlier case, if there is evidence of competent market data, the Commission must use that evidence to determine fair market value, rather than evidence of the property's cost less depreciation. *Lake Monticello Service Co.*, 233 Va. at 115, 353 S.E.2d at 770. Our decision will turn on whether the evidence of comparable sales[2] was properly rejected on the ground assigned. *First Virginia Bank*, 213 Va. at 351, 193 S.E.2d at 5-6.

The Commission's reasoning is based on evidence which showed that the sellers of those allegedly comparable properties were

---

[2] The hearing examiner considered the sale of the company's stock in June 1985 as competent evidence of the value of its assets on the assessment dates. Because the Commission did not specifically refer to that evidence in its opinion, we assume it rejected it for the same reasons that it rejected evidence of the sales of the three other utilities.

under "considerable compulsion to get rid of the properties at any price" and that the buyers were not "willing to buy." Although most of the properties were not profitable because of the Commission's rules limiting the utility's rates to a formula based on invested capital, resulting in a negative rate base, there was no evidence to indicate that any of the sellers were *forced* to sell.

Our definition of the market value of property focuses on those elements which influence a buyer and a seller in arriving at a sale price. It implies that *they* have negotiated at arm's length and agreed upon a price for the property, and we have held that this is the preferred means of determining its fair market value. *Clarke Associates*, 235 Va. at 626, 369 S.E.2d at 415. If property is sold at a forced sale, we do not consider it to be competent evidence of its fair market value because the seller and buyer have not had an opportunity to negotiate and agree upon a price satisfactory to each. *Cromer* v. *DeJarnette*, 188 Va. 680, 686-87, 51 S.E.2d 201, 204 (1949).

The fact that a property is a burden to a seller who is anxious to be rid of it, and that the buyer is relatively disinterested because of the property's lack of profitability, is perhaps one of the strongest and most compelling influences on the fair market value of the property. In fact, the Commission recognized this in its statement, "[t]he evidence certainly leads to the conclusion that the utility has no present *market* value as a whole, viable business." (Emphasis in original.) We recognized this principle in several of our decisions in which we reversed tax assessments of properties economically committed to a particular use. Those assessments were based in large part on what the properties cost and not on their market values, which were much less. *Woman's Club* v. *City of Richmond*, 199 Va. 734, 101 S.E.2d 571 (1958); *Skyline Swannanoa* v. *Nelson County*, 186 Va. 878, 44 S.E.2d 437 (1947); *Washington Bank* v. *Washington Co.*, 176 Va. 216, 10 S.E.2d 515 (1940).

The Commission held, however, that the property "clearly possesses inherent value of great worth" because the subdivision could not have been developed without these water and sewer facilities. In support of its conclusion, the Commission noted the cost to the seller of building the system of about $6,000,000 and the projected expenditure by the Lake Monticello Homeowners Association, the customers of the utility, of between $2,000,000 and $3,500,000 to repair significant deficiencies in the system and

to meet future growth demands. But we have rejected the idea that property can be assessed by a consideration of its value to its owners. *Woman's Club*, 199 Va. at 738, 101 S.E.2d at 574. Furthermore, the cost of the individual components of property making up the system makes no difference in assessing the fair market value of the system *unless* the evidence shows that any such component could be removed from its present location at a cost less than its fair market value after removal.

It did not surprise the Commission, nor does it surprise us, that the properties had no market value upon completion of the system. These considerable expenditures, made by the seller, and to be made by the purchaser, were, and are, for the obvious purpose of improving and maintaining the value of the land as developed lots instead of undeveloped acreage. We took note of that fact in an annexation case in denying a developer's claim against an annexing authority for its cost of installing water, gas, and sewer mains. *Danville* v. *Forest Hills Devel. Corp.*, 165 Va. 425, 429, 182 S.E. 548, 550 (1935). We also take judicial notice of the fact that these developed lots yield more tax revenue to the county than would the undeveloped land.

On appeal, the Commission argues that "the law does not provide for exemption from taxation, or an adjustment of assessed value, because a public service corporation's property has limited uses or earns a limited return," citing *RF & P* v. *Corporation Commission*, 219 Va. 301, 318-20, 247 S.E.2d 408, 418-19 (1978), and *Railroad Company* v. *Commonwealth*, 203 Va. 294, 300-01, 124 S.E.2d 206, 211 (1962). Both cases involved the assessment of the railroad's Potomac Yard in Arlington County and the City of Alexandria. They are inapposite; they dealt with title impediments restricting the use of the land. Because the fee simple interest in the land, and not the landowner's interest subject to the title impediments, was being taxed, we said its fair market value could not be reduced. On the other hand, where the property itself has been so committed to a particular use that it cannot economically be devoted to any other use, its fee simple and market value have been affected. *See Woman's Club*, 199 Va. 734, 101 S.E.2d 571; *Skyline Swannanoa*, 186 Va. 878, 44 S.E.2d 437; *Washington Bank*, 176 Va. 216, 10 S.E.2d 515.

In distinguishing *Woman's Club*, *Skyline Swannanoa*, and *Washington Bank*, relied upon by the railroad in the first case, we noted that the Potomac Yard was susceptible to many uses. *Rail-*

*road Company*, 203 Va. at 300, 124 S.E.2d at 210-11. In contrast, all the evidence in this case indicates that the water and sewer facilities and the 60 miles of each utility system, comprising virtually all the assets of the service company, have no use or value except as a water and sewer system.

We conclude, therefore, that the Commission erred in its method of appraisals, and that the error resulted in an excessive assessment. Having determined that the assessments were excessive in part, we will, pursuant to the provisions of Code § 58.1-2676, reduce the assessments to the agreed market values of the economically removable equipment, *viz.*, $43,045 for 1984, $43,309 for 1985, and $39,836 for 1986, and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*