**CIRCUIT COURT OF SMYTH COUNTY**

MWM, Inc.

v.

Smyth County

June 6, 1991

Case No. (Law) 91-3314

By JUDGE CHARLES H. SMITH, JR.

This matter is pending for decision on the plaintiff's application for a reduction in the tax assessment made on subject property in the 1986 reassessment. The application is filed pursuant to § 58.1-3984 of the Code of Virginia. The subject property is commonly known as the Midway Supermarket and was purchased by the plaintiffs at a foreclosure auction on the 4th of October, 1989. Although not named as a party-defendant in the application, the County of Smyth did file, by its attorney, a responsive pleading noting therein that it is the actual party in interest with regard to the application. At the hearing conducted on April 4, 1991, an oral motion was made and granted to so amend the style and the issues were joined.

The plaintiff contends that it is aggrieved by the assessment of its property by the defendant for tax purposes in the amount of $360,400.00. Plaintiff contends that subject property is assessed at far more than its fair market value and that the assessment is not uniform in its application when compared to similar properties in Smyth County. Plaintiff paid $150,000.00 for subject property at a foreclosure sale in October, 1989. The plaintiff points out that when the property was last reassessed, in 1986, it was a viable, operating business. The defendant

admits that the property is assessed for tax purposes at $360,400.00, $40,000.00 for land and $320,400.00 for improvement. The county denies, however, that the property is incorrectly assessed or that the assessment is not uniform in its application when compared to similar properties. In fact, the county contends that the subject property is under assessed when compared to similar properties within the county.

A review of the applicable constitutional and statutory provisions is helpful. Article X, Section 1, of the Virginia constitution provides:

> All property, except as hereinafter provided, shall be taxed. All taxes shall be levied and collected under general laws and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax . . . .

Section 2 of the same article provides:

> All assessments of real estate and tangible personal property shall be at their fair market value . . . .

Section 58.1-3201 of the code requires that all assessments of real estate be made at 100% of the fair market value. Section 58.1-3252 of the code provides as follows:

> There shall be a general reassessment of real estate every four years. Any county which, however, has a total population of 50,000 or less may elect by majority vote of its Board of supervisors to conduct its general reassessments at either five-year or six-year intervals.

The Smyth County Board of Supervisors, by resolution adopted July 13, 1982, elected to reassess all real estate at six-year intervals. As noted above, subject property was last assessed in January, 1986. Also, as noted above, plaintiff purchased the real estate at a foreclosure sale in October, 1989, for $150,000.00. Plaintiffs evidence reveals that the subject property was unoccupied at the

time and remains unoccupied, is in a rapidly deteriorating condition, and is structurally obsolete for its intended use. Thus, according to plaintiff's testimony and that of its expert, the property is now grossly overassessed, and the tax assessment bears no rational relationship to its true market value. One of plaintiff's officers testified that the property was listed for sale right after they purchased it for $325,000.00 but that they have had no action on the listing and that the price has now dropped to $295,000.00. Plaintiff's expert real estate appraiser put a fair market value on the property of $232,700.00 as of November 30, 1990. Another of plaintiff's experts valued the property at some $247,800.00 as of the date of the hearing. It is noted that all of plaintiff's testimony on the subject relates to the value of the subject property at or near the date of the hearing.

The defense, on the other hand, contends that the present market value of the property is irrelevant, that the relevant inquiry herein is whether or not the reassessment as last made in 1986 was erroneous and should therefore be raised or lowered accordingly. The county contends that the plaintiff, having concentrated on establishing the current market value of the property and having failed to show evidence of any erroneous evaluation as of the date of the last assessment, has failed to sustain its burden of proof. The defendant objected to testimony concerning what plaintiff paid for subject property in 1989 at the foreclosure sale. The defendant is clearly correct in this contention. In the case of *Lake Monticello Service Company v. Board of Supervisors*, 237 Va. 434 (1989), the Supreme Court stated:

> We have said that "fair market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing" . . . .
> Our definition of the market value of property focuses on those elements which influence a buyer and a seller in arriving at a sale price. It implies that they have negotiated at arms length and agreed upon a price for the property, and we have held that this is the preferred means of determining

its fair market value. If property is sold at a forced sale, we do not consider it to be competent evidence of its fair market value because the seller and buyer have not had an opportunity to negotiate and agree upon a price satisfactory to each.

The defense called the Commissioner of Revenue for Smyth County, Richard Walker, who testified as to the correctness of the 1986 assessment of the subject property, as well as to the uniformity of its application. In doing so, he pointed to numerous other similar properties located throughout Smyth County and submitted copies of the tax tickets on each for the year 1986 for comparison purposes.

The defendant called as an expert witness Mr. Dave Hickey of Blue Ridge Appraisal Company of Staunton, Virginia. Mr. Hickey was the managing supervisor for the Smyth County Reassessment of 1986. He testified that he did 90% of all the commercial property assessments for that year himself. Through Mr. Hickey, the defendant introduced a classification code for the various types of commercial properties in Smyth County. Mr. Hickey explained that, while other retail establishments like that of plaintiffs were classified as "CO3" (Commercial Metal Retail Store), the subject property was actually classified as "IO3" (Industrial Metal). This, he indicated, was, in fact, the lowest of such classifications in Smyth County at the time of the reassessment. In so classifying this property, he took into account its location, the fact that it was overbuilt for its location, and its structural obsolescence.

Section 58.1-3984 of the Code provides as follows:

Any person assessed with local taxes, aggrieved by any such assessment, may, unless otherwise specially provided by law, within five years from the last day of the tax year for which any such assessment is made, apply for relief to the Circuit Court of the county or city wherein such assessment was made . . . . In such proceeding, the burden of proof shall be upon the taxpayer to show that the property in question is valued at more than its fair market value or that the assessment is not uniform in its

application, or that the assessment is otherwise invalid or illegal . . . .

The defendant contends that this five-year (formerly three-year) time period merely provides a limitation beyond which an aggrieved taxpayer can no longer complain about or attack an assessment or reassessment of his property. That the burden is upon the taxpayer to submit his application to the court within that time period and to submit evidence to convince the court that the assessment or reassessment was erroneous *when made.* The plaintiff obviously contends that the statute provides a mechanism whereby an aggrieved taxpayer may, at any time during the prescribed time limit, apply to the court for an adjustment of his assessment and need only present evidence to show that the assessment is erroneous or unjust as it applies to the current market value of subject property regardless of its evaluation as of the date of the last assessment. Thus, the plaintiff argues that any decrease in the value of properties caused by normal fluctuations in the real estate market due to recessions, etc., may justify recourse to this procedure and allow some relief to be granted.

The Code provides a very comprehensive and rather complex procedure for the assessment of real estate and the reassessment thereof for tax purposes. The net result of the legislation is to assure that each taxpayer is treated fairly and uniformly and that the tax burden rests equally upon all citizens while also assuring that the taxing authority gets its due. Obviously in order to accomplish this, property values must be reassessed with some degree of regularity. In some areas, this may be annually, but, in Smyth County as noted above, it is done at six-year intervals. As noted by counsel for the defendant, this time interval may very well benefit some taxpayers while penalizing others. Nevertheless, it is a legally permissible method.

Landowners are required to be given advance notice of any reassessment. Once the reassessment is set, the landowner or county, as the case may be, if aggrieved, may first apply to the officers making the reassessment and request a modification. Section 58.1-3330. Failing that, the aggrieved party may apply to the Board of Equali-

zation for redress. The Code, again, mandates the appointment of such a Board to sit and hear complaints concerning inequalities in assessments. The Board is required to give public notice of their meetings to hear complaints. Their term is for six months after the effective date of the assessment for which they were appointed. Section 58.1-3370 *et seq.* Smyth County had such a Board appointed for its 1986 reassessment.

Failing that, the aggrieved party may then apply within five years to the official making the assessment for correction. Section 58.1-3980. Resort to the court, the remedy utilized here, is likewise available during the same five years. Obviously, by the implementation of such an elaborate statutory scheme, the clear legislative intent is that ample opportunity be provided for correcting erroneous assessments.

The issue, as fairly and succinctly stated by the plaintiff is: "whether Section 58.1-3984 allows the court to change an erroneous assessment in the year 1990 and prospectively therefrom without evidence that the assessment was erroneously done in 1985 to be effective 1986." As conceded in its memorandum of April 11, 1991, the plaintiff is "seeking tax relief for the assessment in 1990 as it relates to the fair market value in 1990." I believe the plaintiff misconstrues the statutes and requests relief beyond that which the court is empowered to grant. There was no assessment had in Smyth County in 1990. As noted above, the last reassessment was effective January 1, 1986. The tax on subject property is required to be extended on the same assessment for six years unless a change is lawfully made. The court has noted above the manner in which taxpayers may challenge assessments. The plaintiff is confusing assessments with current market value. If the plaintiff is to be successful, it must prove that the assessment was erroneous, invalid, or illegal when made. As correctly noted by the defendant, any relief granted would then relate back to the original date of the assessment and not just to the current tax year.

The plaintiff has presented no evidence to indicate that the 1986 assessment was erroneous, invalid or illegal when made. The plaintiff presented no evidence as to the value of the property at the assessment on January 1, 1986. The plaintiff relied upon the current market value

of the property and howin that bears no material relationship to the 1986 assessed value.

Property is Smyth County is not reassessed annually, but an aggrieved taxpayer has the right to attack his assessment five of the six years between reassessments. To prevail he must show that the assessment was illegal, invalid or not uniform in application when made. Carrying plaintiff's argument to its logical conclusion would allow a taxpayer, though not troubled by the initial assessment, to attack it at any time within the five years, upon suffering a diminution in his property value due to adverse economic conditions or other factors, e.g., the location of a landfill or corrections center in close proximity to his property. Conversely, it would allow the taxing authority to request additional tax on property realizing a significant increase in value for whatever reason.

For the reasons stated herein, the relief prayed for in the application is denied.